**United States Court of Appeals for the Tenth Circuit**
**OFFICE OF THE CLERK**
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303)844-3157

Elisabeth A. Shumaker
Clerk of Court

Douglas E. Cressler
Chief Deputy Clerk

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 02 2006

GREGORY C. LANGHAM
CLERK

September 29, 2006

Mr. Gregory C. Langham
Clerk
United States District Court for the District of Colorado
Alfred A. Arraj United States Courthouse
Room A105
901 19th Street
Denver, CO 80294-3589

Re: 05-1077, United States v. Hartman
Dist/Ag docket: 03-CR-582-RB

Dear Mr. Langham:

Enclosed for the clerk of the trial court or the named agency, is a certified copy of the order and judgment filed in this case which is issued as the mandate of this court. See Fed. R. App. P. 41(a). Please file it in the records of your court or agency.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk, Court of Appeals

By: [signature]
Deputy Clerk

clk:afw
Enclosure

cc: James O. Hearty
Joshua Stein
W. Craig Williams
Jerry N. Jones
Andrew A. Vogt, Asst. U.S. Attorney
William J. Leone
Dennis W. Hartley

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 7, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DAVID LEROY HARTMAN, also known as David Owens, also known as Donald Wayne Olds, also known as Dave Owens, also known as David Kelly Hartman, also known as Jeffrey L. Meehan,

Defendant-Appellant.

No. 05-1077

District of Colorado

(D.C. No. 03-CR-582-RB)

**A true copy**
**Teste**
**Elisabeth A. Shumaker**
**Clerk, U.S. Court of**
**Appeals, Tenth Circuit**
By
Deputy Clerk

**ORDER AND JUDGMENT***

Before **MURPHY**, **SEYMOUR**, and **McCONNELL**, Circuit Judges.

David Leroy Hartman was found guilty in a jury trial of five criminal counts: possession of a firearm by a previously convicted felon in violation of 18

*After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

U.S.C. §§ 992(g)(1) and 924(e)(2); two counts of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D); possession of a firearm in furtherance of a federal drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and use of another's identification to commit unlawful activity in violation of 18 U.S.C. § 1028(a)(7) and (b)(3).

Mr. Hartman raises four issues on appeal. Three of the issues were initially raised in pre-trial motions: a request to suppress the fruits of an allegedly illegal stop and search, an allegation that the government failed to preserve material evidence, and a request to sever the identification card offense from the other charges. The district court denied all three motions. Mr. Hartman also challenges the district court's decision to allow Detective Grassman to testify as an expert witness during his trial. We affirm the district court's decisions on all four issues.

## Background

On June 23, 2003, Narcotics Detective Grassman of the Denver Police Department received a call from a confidential informant. The informant was known to Detective Grassman, and had provided many reliable tips to him in the past. The informant told Detective Grassman that an individual known as "David," who later was identified as the defendant, was distributing methamphetamine, was in possession of a .357 handgun, and was wanted on a warrant for escape from prison. The last piece of information turned out to be

inaccurate. Although there was a warrant issued for the defendant's arrest, it was not for prison escape. The informant described "David" and told Detective Grassman that he would be at a particular 7-Eleven convenience store in Denver around midnight conducting a narcotics transaction. The informant also told the detective that the individual would be driving a small red car with a broken windshield and side window and would produce false identification with the name "Jeffrey Meehan."

At approximately 12:30 a.m. on June 24, 2003, Detective Grassman observed a man matching the informant's description in the 7-Eleven parking lot in a small red car matching the informant's description. The detective radioed a uniformed police officer to contact the man. He also relayed to other officers that the man might be wanted for escape and was possibly armed and dangerous. Officer Jackson arrived at the scene. He parked his patrol car behind the red car, approached the red car, and requested identification. The driver produced a driver's license with the name of Jeffrey Meehan.

Upon this corroboration of the confidential informant's tip, Detective Grassman told the officers to direct the driver to get out of the car. The officers patted him down for weapons and took him into custody. During the pat-down, an officer discovered a syringe in his left sock. While they were searching the man in the red car, Detective Grassman noticed the chrome barrel of a handgun protruding from underneath the driver's seat and a scale lying on the floorboard

of the driver's seat. A subsequent search of the vehicle uncovered a .357 caliber handgun, a box of ammunition, methamphetamine, crack cocaine, and documents bearing the name "David Hartman."

The police towed and impounded the red car. Though all impound holds on the vehicle were released on December 1, 2003, nobody retrieved the car from the impound yard, and it was crushed and destroyed on January 16, 2004. Sometime before trial, the convenience store destroyed the security tape from the night, as was customary practice for the store.

## I. Search and Seizure

Mr. Hartman claims that the police officers lacked reasonable suspicion for contacting him in the convenience store parking lot and probable cause for the arrest. Consequently, he argues, the district court erred in not suppressing evidence obtained from the stop and search. He argues that (1) the information provided by the officers' confidential informant was not credible or corroborated, (2) the existence of a warrant for his arrest was not confirmed until after he was arrested, and (3) that the warrant was for a crime other than the crime for which the officers' believed they were arresting the defendant. Because we believe the confidential informant's corroborated story provided sufficient reasonable suspicion, we need only consider the first claim.

In reviewing the denial of a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous. *United States v.*

*Higgins*, 282 F.3d 1261, 1269 (10th Cir. 2002). We consider the totality of the circumstances and view the evidence in the light most favorable to the government. *Id.* "Keeping in mind that the burden is on the defendant to prove that the challenged search was illegal under the Fourth Amendment, the ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable de novo." *Id.*

We disagree with the defendant's notion that the confidential informant was somehow not credible, or was without a "history of veracity." Aplt. Br. at 13. Detective Grassman testified to working with the informant "for around four or five years," during which time the informant had never provided false information and had provided "hundreds" of tips leading to "30 or 40" arrests, search warrants, or further investigations. *Id.* at 17-18. *See Illinois v. Gates*, 462 U.S. 213, 230-31 (1983) (holding that the veracity, reliability, and basis of knowledge for a tip, considered as part of the totality of the circumstances, determine whether reasonable suspicion or probable cause exists); *Adams v. Williams*, 407 U.S. 143, 146 (1972) (holding that an officer acted with reasonable suspicion based on a tip provided by an informant who "was known to [the officer] personally and had provided him with information in the past."). Even anonymous tips can serve as the basis of reasonable suspicion when they are corroborated by further observations. *See Alabama v. White*, 496 U.S. 325, 330-32 (1990). As Detective Grassman's confidential informant had a record of

reliability and his story was corroborated, we have no doubt that the officers acted with the requisite reasonable suspicion. Nor is there any reason to doubt that the officers had probable cause to proceed with an arrest after they discovered the syringe, drugs, weapon, and scales.

There is no need to consider the defendant's arguments regarding the arrest warrant. The officers had ample basis for arresting the defendant even if an arrest on the basis of the unverified warrant, without more, would have been unjustified.

## II. Severance of the Criminal Counts

Mr. Hartman argues that the district court's joinder of the identification card offense with the other four charges was improper under both Rule 8(a) and Rule 14 of the Federal Rules of Criminal Procedure.

Mr. Hartman did not raise a Rule 8(a) objection in the district court. "[I]f an appellant fails to alert the trial court to claimed error, the issue cannot be raised for the first time on appeal unless plain error is held to apply." *United States v. Jordan*, 890 F.2d 247, 250 (10th Cir.1989). We review for plain error when an issue of criminal procedure that affects substantial rights was not brought to the trial court's attention. Fed. R. Crim. P. 52(b). Before we can correct an error not raised at trial, the defendant must establish that "there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th

Cir.2005) (en banc). In this context, "'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'" *United States v. Olano*, 507 U.S. 725, 734 (1993).

We do not believe that the district court's decision to allow joinder of the charge was an error under Rule 8(a). Even if there was an error on the court's part, it is neither clear nor obvious. The district court certainly had the discretion to find that the false identification and the other charges were "of the same or similar character or are based on the same act or transaction." Fed. R. Crim. P. 8(a). We find no error in the court's decision.

As to Mr. Hartman's Rule 14 contention, we review the district court's denial for an abuse of discretion. *United States v. Colonna*, 360 F.3d 1169, 1177 (10th Cir. 2004). "The decision to grant a severance is within the sound discretion of the trial court and its decision will not ordinarily be reversed in the absence of a strong showing of prejudice." *United States v. Strand*, 617 F.2d 571, 575 (10th Cir. 1980). "Consequently, the burden of a defendant to show an abuse of discretion in this context is a difficult one." *Colonna*, 360 F.3d at 1178 (quoting *Jones*, 213 F.3d at 1260) (quotations omitted).

In deciding whether to sever a joined claim for trial, the court must balance the potential prejudice to the defendant of keeping the claims joined against the cost and inconvenience of holding a separate trial. *United States v. Janus Indus.*, 48 F.3d 1548, 1557 (10th Cir. 1995). The expense and inconvenience of holding an additional trial are clear. On the other side of the scale, however, the

defendant provides little more than speculation that the "jury *might* have been improperly influenced by the combination of the charges." (Aplt. Br. at 16.) (emphasis added). Nowhere does the defendant point to anything in the record that shows actual prejudice.

Under our precedents, the joinder of the defendant's combined offenses does not rise to the level of prejudice necessary to find an abuse of discretion. *See, e.g.*, *Janus Indus.*, 48 F.3d at 1557-58 (upholding the denial of severance for drug and paraphernalia charges); *United States v. Price*, 265 F.3d 1097, 1105 (10th Cir. 2001) (upholding the denial of severance for drug and weapons charges on the defendant's unsupported assertion of prejudice); *United States v. Cox*, 934 F.2d 1114, 1119 (10th Cir. 1991) (upholding the denial of severance for marijuana, firearms and other controlled substance offenses, though the offenses may have arisen from three distinct and unrelated sets of activities). As in those cases, we uphold the district court's discretion in denying severance of the charges.

## III. Destroyed Evidence

Mr. Hartman's third claim is that the government destroyed potentially useful evidence in violation of his due process rights. He claims that the car he was driving on the night of his arrest, which was impounded and then destroyed seven months later, contained potentially exculpatory evidence, including a receipt from the convenience store and a faulty dome light. He further claims that

the government violated his due process rights by not preserving a security video from the convenience store for the night of his arrest. We are unpersuaded by either argument.

This Court reviews the district court's conclusion for clear error, and applies two separate tests to decide whether the government's destruction of potentially exculpatory evidence violated the defendant's due process rights. *United States v. Bohl*, 25 F.3d 904, 909-10 (10th Cir. 1994). If the exculpatory value of the evidence is *apparent* before its destruction, then we follow the test in *California v. Trombetta*, 467 U.S. 479, 489 (1984), and ask whether the defendant remains able to "obtain comparable evidence by other reasonably available means." *Id.* If the exculpatory value of the evidence is *indeterminate* and all that can be shown is that the destroyed evidence was "potentially useful" for the defendant, then we follow the test in *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), and require the defendant to show that the government acted in bad faith. *Id.* at 910.

The defendant's situation fails both tests. Leaving aside the fact that defendant had access to the evidence before its destruction, the defendant nowhere explains how the exculpatory value of the vehicle was "apparent" to satisfy the standard of *Trombetta*. To the contrary, Detective Grassman testified that he had released the hold on the impounded vehicle precisely because he felt it had no evidentiary value. **Simply because a vehicle was at the scene of the crime**

does not make its exculpatory value apparent. Nor was it necessarily apparent that a security video not in the government's possession and control has any exculpatory value simply because the arrest was in a convenience store parking lot. Even had the video had exculpatory value, it is not clear under the precedents cited that the government has any duty to preserve evidence not in its control.

Nor does the government's conduct fail the test of *Youngblood*. Mr. Hartman's suggestion that the government acted in bad faith lacks any foundation other than the defendant's naked assertions. Nowhere does he provide any specific examples or evidence of the government acting in a way that this Court would characterize as bad faith. If anything, the record supports an alternative conclusion – that the police were indifferent to what would happen to the impounded vehicle, acted well within the boundaries of police policy and procedures, and were not responsible for preserving the video over which they had no control.

**IV. Detective Grassman's Expert Testimony**

Finally, Mr. Hartman claims that the district court abused its discretion in allowing Detective Grassman to testify as an expert about drug users and dealers. He argues, first, that Detective Grassman was not qualified to testify as an expert on the habits of drug users and dealers, and second, that even if the detective was qualified, his testimony impermissibly stated conclusions or inferences about Mr. Hartman's mental state.

We review the district court's admission of expert testimony for an abuse of discretion. *United States v. Velarde*, 214 F.3d 1204, 1208 (10th Cir. 2000). The district court's discretion to admit expert testimony is broad. *Id.* Not only must the trial court be given broad discretion to decide *whether* to admit expert testimony, it "must have the same kind of latitude in deciding *how* to test an expert's reliability." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

Turning first to Mr. Hartman's argument that Detective Grassman was not qualified to testify as an expert, Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

We have stated that "Rule 702 thus dictates a commonsense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991). We have further held that testimony on the amount of illegal drugs possessed is specialized knowledge. *Id.* ("A person possessing no knowledge of the drug world would find the importance of [an amount of rock cocaine] impossible to understand. The average juror would not know whether this quantity is a mere trace, or sufficient to pollute 1,000 people."); *United States v. Muldrow*, 19 F.3d 1332, 1338 (10th Cir. 1994) (finding the amount of cocaine

involved in the case had little significance to those unfamiliar with drug use, and therefore the detective's expert testimony appropriately assisted the jury). In the case at hand, it is reasonable to assume that the habits of drug dealers – including the amounts and combinations of drugs, methods of distribution, and the use of firearms – are not within the expertise of a lay person and the testimony of a trained narcotics detective with 19 years experience involving more than 1,000 narcotics investigations would assist in informing the average jury .

As a final argument, Mr. Hartman claims that Detective Grassman "went outside of his specialized knowledge by opining about the defendant's actual intent" in violation of Fed. R. Evid. 704(b). Mr. Hartman cites to no evidence in the record of such statements. The argument is therefore waived. Tenth Cir. R. 28.2(C)(2), (3)(a)*; see United States v. McClatchey*, 217 F.3d 823, 835-36 (10th Cir. 2000) (concluding that an appellee waives an argument against the admissibility of evidence when the appellee makes no specific citations to the record for the allegedly erroneous evidence).

**Conclusion**

The judgment of the United States District Court for the District of Colorado is **AFFIRMED**.

Entered for the Court,

Michael W. McConnell
Circuit Judge