From : David L. Hartman
on date 9/10/09

Crm. case# 03-cr-00582-REB

~~Civ. case# 07-cv-01921-REB~~

Dear Honorable Judge Robert E. Blackburn:

On 9/08/09 the date I mailed a Motion to Supplement my § 2255 asking the Court to consider a Begay/Chambers Claim that establishes that I am actually Innocent of being an Armed Career Criminal (ACCA) because my prior conviction for attempted escape (I walked away from a halfway house) did not qualify as a triggering Felony for the ACCA enhancement.

After I mailed my Motion to Supplement to this Court I discovered the Tenth Circuit's very recent decision in <u>United States V Charles</u>, 2009 WL 2436663 (10th Cir. 2009), that supports my claim. I ask that this Court please consider the <u>Charles</u> decision while evaluating the merits of this claim.

Thank You for your time and consideration.

Respectfully,

9/10/09

David L. Hartman

FCI Big Spring
1900 Simler Ave.
Big Spring, Texas  79720

# CERTIFICATE OF SERVICE

I, _DAVID L. HARTMAN_ , hereby certify that I have served a true and correct copy of the following: LETTER TO THE COURT (HONORABLE JUDGE ROBERT E. BLACKBURN) ASKING TO PLEASE CONSIDER THE U.S. V. CHARLES, 2009 WL 2436663 (10th CIR. 2009), A VERY RECENT DECISION WHILE EVALUATING THE MERITS OF THE MOTION I MAILED TO SUPPLEMENT MY §2255 ON 09/08/09 ON A BEGAY/CHAMBERS CLAIM OF NOT QUALIFYING FOR ACCA ENHANCEMENT

which is deemed filed at the time it was delivered to prison authorities for forwarding, *Houston v. Lack, 487 U.S. 266 (1988), upon the (plaintiff / defendant) (petitioner / respondent) (appellant / appellee) and/or its attorney(s) of record by placing same in first-class postage prepaid envelope addressed to:  ANDREW A. VOGT
ASST. U.S. ATTORNEY
COLORADO BAR 004371
1225 17th STREET, SUITE 700
DENVER, CO.    80202

and deposited into this institution internal mail system located at FCI Big Spring, 1900 Simler Avenue, Big Spring, Texas 79720, on this _10th_ day of _SEPTEMBER_ , 2009

_David L. Hartman_

*Pursuant to Fed. R. App. P25(a)(2)(c), "A paper filed by an inmate confined in an institution is timely filed if deposited in the institution's internal mail system on or before the last day for filing."

pornography from the internet in his New York home. The Sheriff's Office informed New York State authorities of the admission, and the New York authorities commenced an investigation, obtaining a warrant to search the computers located at the defendant's residence. On August 17, 2006, police officers executed the search warrant, seizing two computers, ultimately finding over two hundred images on the computers. Several of the images stored depicted adult males vaginally penetrating prepubescent females. The district court increased the base offense level by four points under §2G2.2(b)(4), finding that the images contained conduct that "would be painful" for the victim. The defendant appealed the enhancement, arguing that while the district court commented that the depicted acts "would have to be painful," it did not find that the images were "sadistic or masochistic" or "otherwise depicted violence." The Second Circuit disagreed, holding that "[i]n light of the District Court's finding that the acts depicted in the photographs would have to be painful, and our holding in *United States v. Delmarle*, 99 F.3d 80, 83 (2ⁿᵈ Cir. 1996) that it is within the district court's discretion to conclude that the subjection of a young child to a sexual act that would have to be painful is excessively cruel and hence is sadistic within the meaning of §2G2.2(b)(4), we reject [the defendant's] challenge. We hold that when a District Court makes an objective determination that (1) an image depicts sexual activity involving a minor and (2) the depicted activity would have caused pain to the minor, the court establishes an adequate basis for the application of the enhancement set forth in section 2G2.2(b)(4)."

### *United States v. Charles*
### 2009 WL 2436663 (10ᵗʰ Cir. 2009)
### Escape under 28 U.S.C. §751(a) not a crime of violence under §2K2.1(a)(2)

While attempting to evade several approaching Topeka Police Department bike unit officers, the defendant hurried up some stairs and collided with another officer, leading to a scuffle. After he was handcuffed, officers discovered a nine millimeter firearm in his waistband, leading to a conviction of possession of a firearm after two felony convictions. The district court imposed a sentence of 57 months, finding that, pursuant to §2K2.1(a)(2), the defendant had a prior drug conviction, as well as conviction for a crime of violence, based on his prior conviction for walking away from a halfway house. The Tenth Circuit reversed, noting that the defendant had been convicted under 18 U.S.C. §751(a), which prohibits the generic crime of "escap[ing]

or attempt[ing] to escape from the custody of the Attorney General," and includes failing to return to custody. Because "the district court did not have the benefit of the Supreme Court's decision in *Chambers v. United States*, 129 S. Ct. 687, 691 (2009), we agree with [the defendant] and the government that [the defendant] is entitled to resentencing, as *Chambers* casts doubt as to whether [the] conviction under 28 U.S.C. §751(a) was a crime of violence. We thus vacate his sentence and remand."

### *United States v. Nacchio*
### 573 F.3d 1062(10ᵗʰ Cir. 2009)
### Loss amount for insider trading reversed

The defendant, the former CEO of Qwest Communications International, Inc. ("Qwest"), was convicted of nineteen counts of insider trading. The charges stemmed from the defendant's sale of Qwest stock over a period of several months based on insider information that ultimately lead to the stock's decline. At sentencing, the government argued that the amount of loss should be based on the "gain resulting from the offense" or at least $44.6 million, the net profit the defendant received. The defendant contended that the loss should be $1.8 million, the amount attributed to the inside information he used. The district court rejected both and calculated a loss of $28 million, which was the total loss minus the income taxes withheld. On appeal, the court explained that "[t]he plain language of §2F1.2 supports the notion that an insider trading defendant's 'gain' should not consist of the total amount that the defendant realized from his or her stock sales, but should be limited more specifically to the gain that resulted from trading with insider knowledge. In other words, a corporate insider who trades without knowledge of material, nonpublic information is not committing the offense; nor is a corporate insider who has such inside information but does not trade while possessing it. Both elements-knowledge and deceptive action-are necessary to complete the offense. Because mere trading does not constitute criminal insider trading, it logically follows that any gain associated with lawful trading should not be considered gain as used to increase a prison sentence. We then must know what 'the offense' is, because the guideline does not look to 'gain' simply, but to the 'gain resulting from the offense.' The general application instructions support the circumscription of the gain computation to that gain resulting from the deceptive nature of the action. We conclude that the district court's gain computation approach does not square with the plain

DAVID L. HARTMAN #32466-013
FEDERAL CORRECTIONAL INSTITUTION
1900 SIMLER AVE.
BIG SPRING, TX, 79720.

RECEIVED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 14 2009

GREGORY C. LANGHAM
CLERK

OFFICE CLERK OF COURT
RE: JUDGE ROBERT E. BLACKBURN
UNITED STATES DISTRICT COURT
ALFRED A. ARRAJ COURTHOUSE
901 - 19th STREET, ROOM A-105
DENVER, CO. 80294-3589