UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Criminal Case No. 03-cr-00582-REB
(Civil Action No. 07-cv-01921-REB)

UNITED STATES OF AMERICA,

     Plaintiff-Respondent,

v.

DAVID LEROY HARTMAN,
     Defendant-Movant.

_____

### AMENDED[1] ORDERS RE: DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY
_____

**Blackburn, J.**

The matters before the court are (1) the **Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody** [#129][2] filed September 10, 2007, by the defendant-movant; and (2) the **Application To Proceed In Forma Pauperis Pursuant to 28 U.S.C. § 1915** [#130] filed September 10, 2007, by the defendant-movant;.[3] I deny the motion to vacate under § 2255, and I deny as moot the motion to proceed *in forma pauperis*.

---

[1] This amended order is entered to comply with Rule 11(a) of the Rules Governing Section 2255 Proceedings For The United States District Courts. *See* p.15, ¶ 3, *infra*.

[2] "[#129]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

[3] Because the defendant-movant is pro se, I continue to view his papers with the liberality due pro se litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007); *Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21,92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972)).

**BACKGROUND**

On June 23, 2003, Frank Gassman, who had been a policeman in Denver, Colorado, for approximately 25 years and a narcotics detective for the previous 19 years [#117 at 20-21], received information from a confidential informant, which information led to the arrest of defendant-movant in the instant case. Detective Gassman had worked with this particular confidential informant for "around four or five years," during which time the informant had never provided false information but had provided "probably a hundred" tips, of which "30 or 40" had led to arrest, search warrants or further investigation." [*Id.* at 49-50, 69.] On this occasion, the confidential informant made multiple telephone calls to Detective Gassman [*id.* at 70, 72] in which the detective was informed that an individual, known to the informant as "David," (1) was involved in the distribution of methamphetamine; (2) was in possession of a .357 caliber handgun; (2) was driving around in a small red car with a broken windshield and broken side window; (3) was using identification under the name of Jeffrey Meehan; and (4) was wanted on an outstanding warrant for escape. [*Id.* at 49-50.] The confidential informant described "David" in detail: a white male, 40 to 45 years old, six feet tall, 180 pounds, numerous tattoos on his arms, long hair worn in a ponytail. [*Id.* at 50-51.] In the last call to Detective Gassman, at approximately 11:30 p.m. [*id.* at 73], the informant stated that "David" would be at a particular 7-Eleven convenience store in Denver at approximately midnight to conduct a narcotics transaction. Additionally, the informant stated that "David" would be driving the previously described red car with the broken glass and that, if approached, "David" would produce false identification in the name of Jeffrey Meehan. [*Id.* at 51-52.]

Detective Gassman began surveillance of the parking lot of the convenience store shortly before midnight. [*Id.* at 52.] At approximately 12:30 a.m., on June 24, 2003, Detective Gassman saw a small red car matching the description given by the confidential informant enter the parking lot of the convenience store. [*Id.*] The driver of the car parked it in a well lighted area near the corner of the store and remained in the vehicle as Detective Gassman continued to watch through binoculars. [*Id.* at 52-53.] After several minutes, Detective Gassman drove his own car closely past the parked red car and observed that the driver was a tall white male of the approximate age predicted by the informant, with long hair tied back in a ponytail and tattoos on his arms. [*Id.* at 53, 76.] Detective Gassman also saw that the red car had broken glass as described by the confidential informant. [*Id.* at 53, 76.]

Satisfied that this was the individual whom the confidential informant described as being wanted for escape, Detective Gassman radioed for a uniformed police officer to make contact with the driver of the red car and relayed to other officers information that the driver of the red car was possibly wanted for escape and was possibly armed and dangerous. [*Id.* at 54-55, 79, 89, 97, 100.] Officer Jackson arrived at the scene within a few minutes, parked his patrol car near the red car, approached the driver of the red car, and requested identification. [*Id.* at 54] The driver of the red car produced a New Mexico driver's license in the name of Jeffrey Meehan. [*Id.*] With this last bit of corroboration of the information from the confidential informant, Detective Gassman told other uniformed officers who had arrived on the scene to remove the driver from the car and "to pat him down for officer safety purposes." [*Id.* at 55.] Officer Vasquez removed the driver from the red car, handcuffed him, and patted him down for weapons. [*Id.* at

3

55, 82, 86-87, 99.] During the pat-down, Officer Vasquez discovered a syringe in the driver's sock, the possession of which is a violation of the Denver municipal code. [*Id.* at 73] As the driver was being patted down for weapons, Detective Gassman looked into the car through the open driver's door and saw, in plain view, the barrel of a .357 caliber handgun protruding from underneath the driver's seat and a scale lying on the floorboard in front of the driver's seat. [*Id.* at 55-58, 68-69.] The driver, who was later identified as David Leroy Hartman, the defendant-movant, continued to insist that he was Jeffrey Meehan. [*Id.* at 67-68.] A search of the car incident to defendant-movant's arrest produced documents bearing the name of David Hartman, substantial quantities of methamphetamine and cocaine base (crack). [*Id.* at 59-63], a box of ammunition on the console, and a speed loader for the handgun on passenger seat.[4] Movant was detained for the officers to confirm the existence of a felony warrant. [*Id.* 101.] After learning defendant-movant's true identity and surname, it was confirmed that there was a valid warrant for his arrest (albeit for a parole violation, not for escape). [*Id.* at 61-63.]

On July 26, 2004, a federal grand jury returned a six-count Superseding Indictment charging Movant as follows: Count One – Possession of a Firearm by a Previously Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(2); Count Two – Possession with Intent to Distribute a Controlled Substance (Cocaine Base), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D); Count Three – Possession with Intent to Distribute a Controlled Substance (Methamphetamine), in violation of 21 U.S.C.

---

[4] The evidence of ammunition and speed loader within the sight and easy reach of defendant-movant effectively vitiates his claim that he did know that the handgun right under his feet under the driver's seat was even in the car.

§ 841(a)(1) and (b)(1)(D); Count Four – Possession of a Firearm in Furtherance of a Federal Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A); Count Five – Possession of an Unauthorized Military Identification Card, in violation of 18 U.S.C. § 499; and Count Six – Use of Another's Identification to Commit Unlawful Activity, in violation of 18 U.S.C. § 1028(a)(7) and (b)(3). [# 32] Prior to the return of the Superseding Indictment, defendant-movant had filed a variety of pretrial motions, including a Motion to Suppress Illegal Stop and Search and the Fruits of that Search [#27] and a Motion for Sanctions for Failure to Preserve Material Evidence [#29]. Following the return of the Superseding Indictment, defendant-movant filed additional pretrial motions, including a Motion to Dismiss Count V of the Superseding Indictment for Failure to State an Offense [#46] and a Motion for Severance of Counts I, II, III, IV from Counts V and VI [#48]. Following an evidentiary hearing on August 30, 2004, I denied the Motion for Sanctions for Failure to Preserve Material Evidence [Hrg. Tr. 8/30/2004 at 40-47], denied the Motion to Dismiss Count V [#56], denied the Motion for Severance of Counts I, II, III, IV from Counts V and VI [#54], and ordered additional briefing by the parties on the motion to suppress [Hrg. Tr. 8/30/2004 at 104-05]; [# 52]. Subsequently, I also denied the motion to suppress. [#61]

On October 21, 2004, the government moved to dismiss Count Five of the Superseding Indictment [#68], and the count was dismissed the following day [#70]. A trial to a jury commenced on November 1, 2004, and ended on November 4, 2004, with the return of verdicts finding defendant-movant guilty of all five remaining counts as charged in the Superseding Indictment [#86].

On May 20, 2004, prior to trial and motions hearing, defendant-movant advised

me of problems he was having with his retained counsel, C. Bradley Calbo, who was then the subject of state bar licensing proceedings, and requested the appointment of another attorney to represent him. [#17] In response, on June 1, 2004, I appointed the Federal Public Defender to represent defendant-movant. [#21] Assistant Federal Public Defender, Ann England, entered her appearance on defendant-movant's behalf on June 7, 2004 [#23], and thereafter represented defendant-movant in the proceedings before this court.

At the sentencing hearing on January 28, 2005, I imposed sentences of imprisonment as follows: concurrent terms of 180 months on Counts One, Two, and Six; a term of 12 months on Count Three, to run concurrently with the terms imposed in Counts One, Two, and Six; and a term of 60 months on Count Four, to run consecutively to the other terms imposed [#105].

Defendant-movant appealed from the judgment of this court, assigning error to my (1) denial of his motion to suppress; (2) denial of his motion to sever counts; (3) denial of his motion for sanctions for the destruction of evidence; and (4) denial of his anticipatory objection to the reliability of an expert witness concerning his mental state.[5] *See United States v. Hartman*, 194 Fed. Appx. 537, 2006 WL 2567800 (10th Cir., Sept. 7, 2006) (unpublished). The judgment of this court was affirmed on September 6, 2006. *Id.*

On September 10, 2007, defendant-movant filed his motion to proceed *in forma pauperis* and motion pursuant to 28 U.S.C. § 2255 collaterally attacking the judgment of

---

[5] Defendant-movant did not impugn any aspect of sentencing on direct appeal.

this court.[6]

## DISCUSSION

Defendant-movant raised four claims in his § 2255 motion:

- **Claim One:** that the United States Court of Appeals for the Tenth Circuit erred in affirming on appeal this court's denial of his motion to suppress;

- **Claim Two:** that the United States Court of Appeals for the Tenth Circuit erred in affirming on appeal this court's denial of his motion to sever counts; and

- **Claim Three:** that he received ineffective assistance from his appointed trial counsel because she (1) did not receive from Mr. Calbo, defendant-movant's quondam retained counsel, discovery and other documents, including investigation reports, medical records, third party statements concerning the ownership of a vehicle and its contents, and notes; (2) "failed to have Attorney Calbo held in contempt" after being served with a subpoena which required the production of discovery previously provided by the government; and (3) incorrectly and insufficiently advised defendant-movant in an unspecified way about the consequences of "not accepting a plea bargain"; and

- **Claim Four:** that he was improperly convicted and sentenced because (1) a witness stated on cross-examination that he and other witnesses had been "coached" in their testimony in an unspecified way; (2) a jury did not

---

[6] The motion to vacate appears to have been signed by Movant (who is incarcerated) on September 4, 2007, and mailed in an envelope bearing a postmark of September 5, 2007.

specifically find, for purposes of sentencing, whether the substance found during Movant's arrest was cocaine powder or cocaine base as purportedly required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and (3) the prosecutor and government agents interviewed defense witnesses before the trial and improperly withheld from defendant-movant unspecified "exculpatory evidence, which could have exonerated" defendant-movant in some unspecified way.[7]

Defendant-movant's Claims One, Two, and Four are barred procedurally in a collateral attack under § 2255. Additionally, Claims One and Two have been adjudicated already by the United States Court of Appeals for the Tenth Circuit and therefore, are barred in a collateral attack as the law of the case and under the doctrine of res judicata. Defendant-movant's remaining Claim Three is without merit.

### A. Defendant-movant's Claims One, Two, and Four are procedurally barred.

The Supreme Court has held expressly that, once a defendant's chance to appeal an issue has been waived or exhausted, a court faced with a subsequent collateral attack is entitled to presume that he stands fairly and finally convicted, especially when, as here, "he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). *See United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994) ("[Section] 2255 is not available to test the legality of matters which should have been raised on appeal"), *cert. denied*, 487 U.S. 1222 (1988); *Bousley v. United States*, 523 U.S. 614, 621 (1998)

---

[7] Once again, defendant-movant did not assign error to any aspect of sentencing.

(Section 2255 provides "an extraordinary remedy and will not be allowed to do service for an appeal").

Here, defendant-movant raised in his direct appeal precisely the same issues he now seeks to raise in his Claims One and Two, and he acknowledges in his § 2255 motion that he did so – both explicitly and implicitly – by asking this court to "rectify" the "error[s]" of the Court of Appeals. *See* Motion at 3, 6. *See also Hartman*, 194 Fed. Appx. at 539-41. Thus, defendant-movant has exhausted his claims that this court erred in its denial of his suppression and severance motions. Because he raised these issues in his direct appeal, he is foreclosed from raising them in a collateral proceeding. *See United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994) (a defendant is precluded from alleging issues in a § 2255 motion which have already been addressed on direct appeal); *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir.1989) (same). Put another way, the defendant-movant is precluded from raising these issues again because of the related doctrines of *res judicata* and the law of the case, since the Tenth Circuit has already considered the matter on review, and a lower court cannot now overturn that appellate decision. *See, e.g., United States v. Arnulfo-Sanchez*, 219 Fed.Appx.796, 799, 2007 WL 756439, at *3 (10th Cir. March 14, 2007).

Similarly, defendant-movant could have asserted in his direct appeal all of the allegations and issues he now seeks to raise in Claim Four of his collateral attack under § 2255, but he did not do so. He necessarily knew before the judgment of this court was signed and entered (1) that a witness had purportedly stated *on cross-examination during the trial* that he and other witnesses had been "coached" in their testimony in an unspecified way; (b) that the *jury did not specifically find*, for purposes of sentencing,

whether the substance found during defendant-movant's arrest was cocaine powder or cocaine base as purportedly required by *Apprendi*; and (c) that the prosecutor and government agents had interviewed defense witnesses *before the trial* and had purportedly improperly withheld from defendant-movant unspecified "exculpatory evidence which could have exonerated" defendant-movant in some unspecified way. "Generally, a movant [under § 2255] is barred from raising an alleged error affecting his conviction or sentence for the first time on collateral review unless he can show both cause for the default and actual prejudice." *United States v. Wiseman*, 97 F.3d 975, 979 (10th Cir. 2002) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)); *see also United States v. Bailey*, 286 F.3d 1219, 1223 (10th Cir.), *cert. denied*, 537 U.S. 877 (2002). Actual prejudice is a demanding standard that requires the defendant to carry a burden "significantly higher" than he would be required to satisfy on direct review under the plain error standard. *Frady*, 456 U.S. at 166. "[Section] 2255 is not available to test the legality of matters which should have been raised on appeal." *Allen*, 16 F.3d at 378; *Bousley*, 523 U.S. at 621 ( "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in *habeas* only if the defendant can first demonstrate either 'cause' and actual prejudice, or that he is actually innocent"). Here, defendant-movant makes no attempt whatsoever to demonstrate cause and prejudice to excuse his procedural default or actual innocense notwithstanding the jury's verdicts to the contrary.

Accordingly, defendant-movant's Claims One, Two, and Four are procedurally barred from inclusion in a collateral attack under § 2255.

    **B.**    **The record plainly demonstrates that Movant's Claim three is**

**without merit.**

Generally, to establish a claim of ineffective assistance of counsel, a defendant must show (1) that his counsel's performance fell below the constitutional minimum guaranteed by the Sixth Amendment, that is, "an objective standard of reasonableness," and (2) that his counsel's errors prejudiced him, that is, "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687-88, 690 (1984). Prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In order to demonstrate prejudice, a movant under 28 U.S.C. § 2255 must establish that counsel's performance rendered the proceedings "fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). A court may not set aside a conviction or a sentence solely because the outcome would have been different absent counsel's deficient performance." *Id.* at 369-70.

Counsel's performance is judged on a reasonableness standard, viewing all circumstances at the time when the conduct occurred. *Strickland*, 466 U.S. at 690; *United States v. Smith*, 10 F.3d 724, 728 (10th Cir. 1993). There is a strong presumption that counsel's performance was not ineffective and "'f[ell] within the wide range of reasonable professional assistance.'" *United States v. Clonts*, 966 F.2d 1366, 1370 (10th Cir. 1992) (quoting *Strickland*, 466 U.S. at 689). To overcome this strong presumption, a defendant-movant "must shoulder a heavy burden." *Catches v. United States*, 582 F.2d 453, 457 (8th Cir. 1978). The Supreme Court has recognized that

11

> [t]here is a <u>strong presumption</u> that counsel's performance falls within the wide range of professional assistance, . . . the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. The reasonableness of counsel's performance is to be evaluated <u>from counsel's perspective at the time of the alleged error</u> and in light of all the circumstances, and the standard of review is highly deferential.

*Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citations omitted) (emphasis added).

If a defendant-movant fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must fail. *See Strickland*, 466 U.S. at 697. In the instant case, viewing all the circumstances at the time when the conduct occurred, the performance of defense counsel was objectively reasonable and effective, and defendant-movant suffered no actual prejudice therefrom.

Defendant-movant complains that he received ineffective assistance of counsel from Assistant Federal Public Defender, Ann England, in violation of his Sixth Amendment right to counsel because she did not receive from his previous counsel, Mr. Calbo, discovery and other documents, including investigation reports, medical records, third party statements concerning the ownership of a vehicle and its contents, and notes (presumably notes made by Mr. Calbo). Defendant-movant ignores the fact, however, that Ms. England was appointed to represent him on June 1, 2004, five full months before his trial began on November 1, 2004. Although Ms. England's preparation for the trial might have been made slightly easier if Mr. Calbo had cooperated in providing her with various materials that he had assembled or created, Ms. England had more than enough time to thoroughly prepare for defendant-movant's defense through her independent acquisition and review of discovery, witness statements, and other relevant materials. There is nothing whatsoever in the record that suggests that Ms. England

was impeded in any way from adequately preparing for trial in the ample time available to her. Thus, even if, as defendant-movant now suggests, Mr. Calbo was in possession of discovery documents, materials relating to defendant-movant's mental health, and statements relating to the ownership of a vehicle and its contents, there is nothing in the record to suggest that this information was not known to Ms. England and was not otherwise available to her. Indeed, defendant-movant acknowledges in his motion that Ms. England "was briefed upon" his psychiatric medical records "and stated that they were 'standard procedure,'" which she judged implicitly to be of little value to the defense. § 2255 Motion at 7. Thus, defendant-movant's complaint does not appear to be that his trial attorney's representation fell below the broad range of reasonable professional assistance in violation of his Sixth Amendment right to counsel, but, instead, that his previous counsel did not cooperate with his trial counsel in the five months before the trial.

Defendant-movant's complaint that Ms. England "failed to have Mr. Calbo held in contempt," when Mr. Calbo failed to produce his file in this case pursuant to a subpoena, is also without merit because the question of whether Mr. Calbo was sanctioned in any way for his alleged failure to cooperate is irrelevant to the question of whether the representation provided by defendant-movant's trial attorney was constitutionally deficient. Such a diversionary exercise would have added nothing of substantive value to the defense at trial.

Defendant-movant alleges lastly that, although Ms. England notified him of the terms of a plea agreement offered by the government, her advice about the offer "was so grossly incorrect and insufficient [that] it undermined his ability to make an intelligent

13

decision" about whether to accept the offer or proceed to trial.  § 2255 Motion at 8.

Defendant-movant's allegation is merely conclusory in nature.  He does not identify any

advice given him by Ms. England that was, in fact, "incorrect"; nor does he identify any

material advice that was omitted by Ms. England that rendered her advice "grossly . . .

insufficient" and prevented him from making an intelligent decision about whether to

accept the offer, and which, if given by Ms. England, would have caused defendant-

movant to admit his guilt and waive his right to a jury trial.  Instead, defendant-movant

received precisely what the Constitution guarantees: a trial by jury, and he has

consistently – even to the present – maintained his innocense of the charges against

him.  Without the presentation by defendant-movant of specific, plausible facts which, if

proved, would demonstrate that an error by counsel of constitutional magnitude actually

occurred and that he suffered prejudice therefrom, this court is constrained to conclude

that defendant-movant "is entitled to no relief" under § 2255.  *See* 28 U.S.C. § 2255.

## CONCLUSION

Based on the foregoing facts, law, and analysis, defendant-movant's motion under 28 U.S.C. § 2255 should be denied. Accordingly, appropriate orders should be entered.

## ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody** [#129] filed September 10, 2007, by the defendant-movant is **DENIED**;

2. That the **Application To Proceed In Forma Pauperis Pursuant to 28 U.S.C. § 1915** [#130] filed September 10, 2007, by the defendant-movant is **DENIED** as moot;[8] and

3. That there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).[9]

Dated October 4, 2010, at Denver, Colorado.

BY THE COURT:

Bob Blackburn
Robert E. Blackburn
United States District Judge

---

[8] The request of the defendant-movant to proceed *in forma pauperis* is unnecessary. Thus, I deny the motion as moot without further discussion.

[9] Again, it was the inclusion of this paragraph that necessitated the amended order.