FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2010 DEC -3 PM 1:05

GREGORY C. LANGHAM
CLERK

BY ________________ DEP. CLK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 03-cr-00582-REB
Civil Action No. 07-cv-01921-REB

UNITED STATES OF AMERICA
PLANTIFF

V.
DAVID LEROY HARTMAN
DEFENDANT

---

**DEFENDANTS MOTION TO RECONSIDER**

---

THE DEFENDANT ACTING PROSE, HEREBY REQUESTS THIS COURT TO RECONSIDER, AND VACATE IT'S JUDGEMENT DENYING HIS 28 USC $ 2255 MOTION AND STATES AS FOLLOWS.

1. ON SEPT. 10, 2007 DEFENDT FILED MOTION PURSUANT TO 28 USC $ 2255 WITH THIS COURT [DOC #129] THE GOVERMENT WAS ORDERED TO RESPOND TO THE 2255 MOTION AND DID SO ON OCTOBER 19, 2007 [DOC. 131, 138]. ON NOV 1, 2007 DEFENDANT FILED A MOTION FOR EXTENSION OF TIME TO REPLY TO GOVERMENTS RESPONCE [DOC #139]. NOVEMBER 2, 2007. THIS COURT GRANTED DEFENDANTS MOTION FOR EXTENTION OF TIME TO FILE HIS REPLY IN SUPPORT OF HIS MOTION TO VACATE AND SET ASIDE CONVICTION OR CORRECT SENTENCE UNTIL 12/1/2007 [DOC #129] NOVEMBER 28, 2007 DEFENDANT WITH REPLY IN SUPPORT [DOC #142]

2. JUDGEMENT ON DEFENDANTS 28 USC 2255 MOTION WAS DENIED SEPT. 30, 2010. [DOC #160] DEFENDANT DID NOT RECIEVE ANY ORDER FROM THE COURTS UNTIL NOV. 5, 2010. DENFDANT BROUGHT TO ATTENTION TO THE CORRECTIONS OFFICER WHO WAS PASSING OUT THE PRISON MAIL THAT THE DATE OF THE POSTMARK FROM THE COURTS WAS 35 DAYS EARLIER FROM THE DEFENDANTS GETTING IT ON NOVEMBER 5, 2010

DEFENDANT WAS OF THE UNDERSTANDING THAT THERE WAS A MAIL LOG WHERE SUCH THINGS COULD BE RECORDED. DEFENDANT ASKED THE CORRECTIONS OFFICER TO LOG THIS BUT WAS TOLD THERE IS NO SUCH THING AND THEY DO NOT LOG LEGAL MAIL.

DEFENDANT DID NOT GET THE COURT ORDER UNTIL 35 days AFTER THE COURT ORDER.

RULE 59(E) OF CIVIL PROCEDURES ALLOWS A DEFENDANT 28 DAYS TO APPEAL A JUDGEMENT. IF DEFENDANT WOULD HAVE RECIEVED HIS LEGAL MAIL IN A REASONABLE AMOUNT OF TIME HE COULD HAVE APPEALED IN THAT TIME.

RULE 6 OF CIVIL PROCEDURES:

(b.) EXTENDING TIME

(1.) IN GENERAL. WHEN A ACT MAY OR MUST BE DONE WITHIN A SPECIFIED TIME THE COURT MAY FOR GOOD CAUSE, EXTEND TIME.

(b.) ON MOTION MADE AFTER THE TIME HAS EXPIRED IF THE PARTY FAILED TO ACT BECAUSE OF EXCUSABLE NEGLECT.

THE DEFENDANT WAS GREATLY PREJUDICED BY THIS DENIED HIS RIGHT. DEFENDANT ASKS THIS COURT TO APPLY AND GRANT EQUITABLE TOLLING ALLOWING THE DEFENDANTS "MOTION TO RECONSIDER"

(3.) BECAUSE OF THE TIME RESTRITIONS THE FOLLOWING IS STYLIZED MORE LIKE A CERTIFICATE OF APPEALABILITY. THIS IS IN NO WAY TO BE MISCUED AS ONE.

THE DEFENDANT DOES PLAN TO FOLLOW LATER WITH A C.O.A.

Issue 2. The District Court improperly denied the defendant an evidentiary hearing on his ineffective assistance of counsel argument. The defendant claims that his counsel misled the defendant, at the critical stage when the defendant made the decision whether or not to plead guilty, under the government's proffered plea agreement, or to proceed to trial, concerning "the consequences" the defendant faced "if he did not take the plea bargain." Defendant's § 2255 motion at 8. Specifically, the defendant alleged, through

his Reply to the Government's Response, that his counsel misled him concerning the sentence exposure he faced at trial and the elements of the offense that needed to be proved for conviction--to his prejudice. See: Reply. In the defendant's Section 2255 motion, at page 8, the defendant specifically stated: "Ann England's representation was deficient in failing to properly advise Mr. Hartman of the consequences if he did not take the plea bargain. . . . [T]he advice that was received [by the defendant from his counsel] was so grossly incorrect and insufficient it undermined [the defendant's]ability to make an intelligent decision about whether to accept the government's plea agreement or to continue to trial." Id. In his Reply to the Government's Response to the Defendant's Motion Under 28 U.S.C. § 2255, the defendant asserted, through his sworn affidavit, specific, plausible facts which, if proved, would demonstrate that an error of constitutional magnitude actually occurred at the critical stage when the defendant made the decision whether or not to accept the government's proffered plea agreement or to proceed to trial, and that the defendant suffered prejudice from the error which constituted denial of the defendant's right to effective assistance of counsel at this critical stage in the proceedings. The Government filed a Response to the defendant's motion under Section 2255. In the Government's Response, the government alleged, at page 13, that the defendant had failed, in his Section 2255 motion, to assert specific, plausible facts which if proved, would demonstrate that an error of constitutional magnitude had actually occurred, and that the defendant had suffered prejudice therefrom, when the defendant's counsel failed to properly inform the defendant of the consequences of the defendant's rejection of the government's proffered plea bargain. The defendant filed a Reply to the Government's Response, in which the defendant then asserted specific, plausible facts which, if proved, would demonstrate that an error of constitutional magnitude had actually occurred at the critical stage when the defendant was counseled by his court-appointed lawyer concerning whether or not the defendant should accept the government's proffered plea agreement or go to trial. The defendant's Reply was titled "Memorandum in Support of Section 2255 Petition." In the defendant's Reply, the defendant clearly "related back" to his claim, made on page 8 of the defendant's Section 2255 motion, that his counsel had denied the defendant the right to effective assistance of counsel when the counsel had misadvised the defendant concerning the "consequences if he did not take the plea bargain." In the defendant's Reply (titled "Memorandum in Support of Section 2255 Petition"), the defendant,at pages 3--4, clearly supplied the District Court with specific, plausible facts which, if proved, would demonstrate that an error of constitutional magnitude actually occurred at the critical stage when the defendant was advised by his counsel concerning the decision to either plead guilty, through the government's proffered plea agreement, or to go to trial. The defendant, through his assertion of these specific, plausible facts, clearly provided information and allegations which directly "relate back" to the claim he made in his Section 2255 motion, that his counsel had provided deficient and prejudicial representation through counsel's misadvice concerning the consequences of the defendant's rejection of the government's proffered plea agreement. Specifically, in his Reply, the defendant asserted, at page 3: "Ms. England did not state the full sentence exposure or the additional charges that could be brought," if the defendant failed to accept the government's proffered plea bargain agreement and instead proceeded to trial. The defendant further asserted, through his Reply, that the

defendant was sorely prejudiced and misled by his counsel's misadvice, because the defendant subsequently discovered, upon his rejection of the government's proffered plea agreement, that, as a direct result of his rejection of the government's proffered plea agreement, the defendant now faced conviction on the newly added charge of possession of a firearm in furtherance of a drug trafficking crime, which charge increased the defendant's possible sentence of imprisonment by "an additional five years, consecutive sentence." Defendant's Reply ("Memorandum in Support of Section 2255 Petition"), at p. 3.Moreover, the defendant alleged that his counsel's misadvice sorely prejudiced and misled the defendant, because "I was now charged with two counts of possession with intent to distribute [cocaine base]," which exposed the defendant to significantly more punishment than was contemplated by the government's proffered plea agreement. Id. The defendant further alleged that he had been sorely prejudiced and injured by his counsel's misadvice, and the defendant stated, in his Reply: "As the court read these new charges the defendant asked Ms. England [his counsel] why she [had] not inform[ed] him that [these new charges] could be a possibility [upon his rejection of the government's proffered plea agreement]. Ms. England's reply was[:] 'I'm just as shocked as you are [by the new charges] David.'"Thus the defendant, in his Reply, clearly asserted, in the form of a sworn affidavit, specific, plausible facts which, if proved, would demonstrate that an error of constitutional magnitude actually occurred at the critical stage when the defendant made the decision whether or not to accept the government's proffered plea agreement or proceed to trial, and the defendant clearly made the case that he suffered prejudice from the error, as is evidenced by the defendant's receipt of a sentence of 20 years imprisonment upon his conviction at trial, when the government's proffered plea agreement offered the defendant an estimated sentence of imprisonment that had as its maximum a sentence of 10 years, its estimated guidelines sentencing range of"70 to 87 months" (see the Government's proffered plea agreement, enclosed as an exhibit to this application), and a minimum sentence of no imprisonment, for which the defendant was eminently eligible due to his suffering from diminished mental capacity which contributed to the causation of the offense. (The defendant has been mentally incompetent since, "[w]hen Mr. Hartman was five years old he witnessed his father shoot himself to death." "Request for Downward Departure," in the Defendant's "Notice of Defense Corrections, Additions, and Request for Downward Departure," at p. 2, filed Jan. 10, 2005 in the defendant's case in the District Court.) The defendant further stated,in his Reply, that, when the defendant made his decision to reject the government's proffered plea agreement, he was "informed [by his counsel] that for the very small amount of drugs he would not get any [prison] time let alone 20 years." Defendant's Reply to Government's Response, at p. 3. Then, at page 4 of the defendant's Reply, the defendant levied his most damning charge against his counsel; the defendant alleged that, when he made the critical decision whether or not to plead guilty under the government's proffered plea agreement or proceed to trial, his counsel had seriously misled the defendant through counsel's ridiculous advice that "Ms. England also informed the defendant that he would have to had 'brandished' the weapon in order to be found guilty of possession of a firearm"! Thus, the defendant alleged his counsel provided clearly prejudicial advice concerning the legal test for guilt concerning the charge brought against

("Brandishing" is not an element of the offense of felon in possession of a firearm.) 4

the defendant./The defendant was offered a most generous plea agreement by the government. The government's generous plea agreement offer allowed the defendant to plead guilty to one count of being a felon in possession of a firearm. The government's offered plea agreement asked the defendant to plead guilty to one count of violation of 18 U.S.C. § 922(g)(1), Possession of a Firearm by a Prohibited Person. See: "Plea Agreement and Statement of Facts Relevant to Sentencing," offered by the government to the defendant, presented as exhibit 1 to this Brief./The plea agreement stated, at page 4: "The guideline range resulting . . . is 70 to 87 months." The plea agreement also stated, at page 4: "The armed career criminal adjustment . . . do[es] not apply, as defendant's two burglary convictions were of businesses." Thus it is clear the government offered the defendant a most generous plea agreement, which contemplated the defendant receiving a guidelines sentence of 70 to 87 months as punishment for his violation of 18 U.S.C. § 922(g)(1). The government's offered plea agreement explicitly allowed the defendant to seek a "downward departure" from the federal sentencing guidelines range, due to the defendant's diminished mental capacity, because the plea agreement declared the plea agreement "does not preclude either party from asking the Court to depart from the otherwise appropriate guideline range at sentencing, if that party believes that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the sentencing guidelines." Id., at page 3. The plea agreement clearly declared: "[T]he Court is not bound by any position of the parties" concerning the calculation of the proper sentence for the defendant. Id., at pages 3--4. All competent federal defenders, who represent indigent defendants before our federal courts, are familiar with the several manuals published for the education of federal public defenders who represent indigent defendants in federal criminal cases, such as the manual, Defending a Federal Criminal Case, offered by the Federal Public Defender Office of San Diego, California. Several of these widely-read manuals explicitly state the procedure that is to be followed by a federal public defender when the government offers a defendant a plea agreement wherein the defendant is asked to plead guilty to one count of being a felon in possession of a firearm, pursuant to 18 U.S.C. § 922(g). The manuals carefully state the procedure that must be followed by a federal public defender when the defender's client is offered a plea agreement wherein the defendant is asked to plead guilty under 922(g), when the government believes the "armed career criminal adjustment . . . does not apply." Id. 18 U.S.C. § 924(a)(2) states that "[w]hoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be. . . imprisoned not-more than 10 years." However, 18 U.S.C. § 924(e) declares that "a person who violates section 922(g) . . . and has three previous convictions by any court . . . for a violent felony or a serious drug offense . . . shall be . . . imprisoned not less than fifteen years." Thus, the federal public defender manuals instruct the federal public defender, when the government offers a defendant a plea bargain agreement that contemplates a sentence less than 10 years as punishment for violation of 18 U.S.C. § 922(g), and when the defender's client seeks to plead guilty, that the competent federal public defender shall seek to have the government agree to allow the defendant to plead guilty under 18 U.S.C. § 922(j). The reason for this is obvious.

A conviction for 922(g), when the defendant also has been convicted of three previous felonies that involve serious drug offenses and/or violence, invokes the enhanced punishment imposed by 18 U.S.C. § 924(e), which mandates such an "armed career criminal" suffer the punishment of a minimum mandatory sentence of at least 15 years imprisonment. However, a conviction for violation of 18 U.S.C. § 922(j) (possession of a stolen firearm) carries a maximum sentence of imprisonment of only ten years imprisonment. Thus, the federal defender manuals instruct the federal public defender to seek a guilty plea under an agreement that allows the defendant to be subject only to the 10-year maximum sentence imposed by 922(j), when the government seeks to gain a sentence of less than 10 years imprisonment for a defendant who seeks to plead guilty under 922(g). The reason is that competent public defenders know that, no matter what sentence is contemplated by the government's offered plea agreement, a defendant who pleads guilty under 922(g) faces the possibility that he will receive a manadatory minimum sentence of 15 years imprisonment if, for any reason, the Court at sentencing finds the enhancement provision of 924(e) applies to the sentencing of the defendant. Since the government has sought a sentence of imprisonment that is less than the 10-year maximum imposed by 922(j), there should be no reason why a government that is bargaining in good faith would object to allowing the defendant to plead guilty under 922(j). We must assume the government does not attempt to "sandbag" or mislead a defendant, concerning how a defendant's known criminal history will affect the sentence the defendant shall receive. We must assume the government is not trying to gain an unfair advantage by lying in the plea agreement concerning the sentence the government believes the defendant will face. The government clearly knew, in the case of the present defendant, of the defendant's five prior convictions, when the government declared, in its offered plea agreement: "The armed career criminal adjustment [under 18 U.S.C. § 924(e)] . . . do[es] not apply" to the defendant. However, once the defendant rejected the government's offered plea agreement, and was convicted after a trial, the government, in its Sentencing Statement, changed its argument, and argued that the defendant's five prior convictions qualified as "crimes of violence or drug-trafficking" that were"qualifying convictions for" an "enhanced sentence" "[p]ursuant to the Armed Career Criminal Act (18 U.S.C. § 924(e))." The defendant was then sentenced, upon his conviction at trial for violation of 18 U.S.C. § 922(g), to the enhanced sentence requiring a mandatory minimum sentence of fifteen years imprisonment under 18 U.S.C. § 924(e).

The defendant, in his Reply to the government's Response to the defendant's Section 2255 motion, levied an assertion of specific, plausible facts which, if proved, would demonstrate that an error by counsel of constitutional magnitude actually occurred and that the defendant suffered prejudice therefrom; the defendant asserted, at page 4 of his Reply: "Ms. England also informed the defendant," at the critical stage when the defendant made the decision whether to plead guilty under the government's proffered plea agreement or proceed to trial, "that he would have to ha[ve] 'brandished' the weapon in order to be found guilty of possession of a firearm and [the counsel advised the defendant that counsel] thought there was a good chance of [the defendant] being acquitted [at trial]." The defendant thus asserts that his counsel advised him that he could not be convicted of being a felon in possession of

a firearm, pursuant to 18 U.S.C. § 922(g), unless he had "brandished" the weapon that had been discovered in the car in which he had been a passenger. Moreover, the defendant asserted, in his sworn affidavit (the Reply was made in the form of a sworn affidavit under and in compliance with 28 U.S.C. § 1746), that, at the critical stage in the proceedings, when the defendant made the choice whether to plead guilty under the government's offered plea agreement or proceed to trial, the defendant's counsel sorely misadvised and misled the defendant by advising the defendant that the counsel "thought there was a good chance of [the defendant] being acquitted [at trial]." This advice was provided by counsel to a defendant who was certain to be convicted of being a felon in possession of a firearm, because the evidence against the defendant was overwhelming and conclusive. No competent attorney could ever advise a defendant, in the face of such overwhelming evidence, that "there was a good chance of [the defendant] being acquitted [at trial]." Id. It was this advice that misled the defendant to reject the government's generous plea agreement offer. It was this catastrophic error by counsel that caused the defendant to believe he could win at trial. The defendant was not a lawyer. The defendant was a true mental incompetent, who has been mentally incompetent since he witnessed his father shoot himself to death when the defendant was five years old. The defendant relied on the advice of his counsel. The defendant indeed sought to plead guilty! The defendant advised his counsel he desired to plead guilty under a plea agreement negotiated with the government. The defendant's counsel then misadvised the defendant to the defendant's prejudice. Competent counsel would have attempted to gain the government's assent to a plea of guilty to 922(j), possession of a stolen firearm, because the punishment imposed under the federal sentencing guidelines for conviction under 922(j) would have been identical to the punishment the government proposed for conviction under 922(g) under the government's offered plea agreement. Competent counsel would have thus sought the government's assent to such a plea, which most probably would have been obtained, because the government believed such punishment was appropriate because: "The parties believe the sentencing range resulting from the proposed plea agreement ["70 to 87 months"] is appropriate because all relevant conduct is disclosed, the sentencing guidelines ["70 to 87 months"] take into account all pertinent sentencing factors with respect to this defendant, and the charges to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior." Government's proffered Plea Agreement and Statement of Facts Relevant to Sentencing, at p. 5.

We must assume the government bargains in good faith when it constructs and offers plea agreements to defendants. We must assume the govenment honestly affirmed, through its offered plea agreement, its intention that the defendant's "guideline range resulting [from the guilty plea] . . . is 70 to 87 months," and that "[t]he armed career criminal adjustment do[es] not apply." Plea Agreement, at p. 4. Therefore, we must assume the government would have agreed to a Plea Agreement by the defendant that mandated the defendant was guilty of violation of 922(j), because such a plea agreement carried identical punishment to the Plea Agreement offered by the government to 922(g). The only way to place the defendant back in the position he would have been in, had the constitutional violation not occurred, is to allow the defendant to plead guilty to one count of violation of 18 U.S.C. § 922(j), as this is the only solution that will truly place the defendant back in the position he would have been in had the constitutional violation not occurred.

Competent counsel would have

informed the defendant that, upon the defendant's rejection of the government's proffered plea agreement, the defendant would face, most likely, further criminal charges levied against the defendant by the government: a charge of use of a firearm in furtherance of a drug crime, which would carry a mandatory minimum sentence of five years imprisonment that must be served consecutively to the 15-year sentence the defendant was sure to receive upon his conviction at trial, in a case where the evidence presented by the government against the defendant was truly overwhelming and conclusive. Competent counsel would have informed the defendant that, as a consequence of his rejection of the government's proffered plea agreement, the defendant would also/most probably face severely lengthened punishment because the defendant would be convicted of possession with intent to distribute cocaine base, an offense which, because of the defendant's criminal history, would expose the defendant to a probable guidelines sentence of 262 to 327 months. Competent counsel would have assured the defendant that conviction at trial of all of the above charges was certain, as the evidence against the defendant was truly overwhelming and allowed no possibility for acquittal at trial. Instead, the defective and incompetent counsel advised the defendant that counsel "thought there was a good chance of [the defendant] being acquitted [at trial]." Defendant's Reply, at p. 4. If the defendant had been advised by competent counsel, the defendant would have followed competent counsel's advice to plead guilty under the government's proffered plea agreement. The defendant indeed asked his counsel to negotiate a plea of guilty! The defendant expressed his desire to counsel to plead guilty! It was only the grossly misleading advice from counsel which caused the defendant to accept counsel's belief that "there was a good chance of [the defendant] being acquitted [at trial]." Id. But for counsel's error, the result of the proceedings most certainly would have been different, because the defendant most definitely would have pleaded guilty, through the government's proffered plea agreement, had the defendant received the advice of effective and competent counsel. The proof that the defendant would have pleaded guilty is that the defendant told his counsel he desired to plead guilty through a negotiated plea agreement. The counsel then went to the government and returned with the government's proferred plea. On July 1, 2004, the defendant signed the government's proffered plea agreement, in the presence of his counsel. The defendant thus agreed to accept the government's proffered plea agreement.

Counsel clearly misled the defendant, to the defendant's prejudice, at the critical stage in the proceedings when the defendant made the all-important decision whether to plead guilty through the government's proffered plea agreement or proceed to trial. The defendant's counsel did not understand the law or the punishments her client faced. Thus the counsel sorely misadvised her client, to the client's prejudice. The defendant chose to proceed to trial solely because the counsel misadvised the defendant concerning his true sentence exposure both at plea and trial, and because counsel advised that, to be convicted at trial, the government would have to prove the defendant "brandished" the weapon, and because the counsel misadvised the defendant that the counsel thus "thought there was a good chance of [the defendant] being acquitted [at trial]." Defendant's Reply, at p. 4. If the defendant had received competent advice, concerning the consequences of the defendant's rejection of the government's proffered plea agreement, the true sentencing exposure the defendant faced under the plea agrement and at trial, and the certainty of the defendant's conviction at trial, the defendant most certainly would have accepted the government's generous plea offer, which would actually indeed have found the defendant sentenced to a term of imprisonment significantly less than the 20-year mandatory minimum sentence the defendant received. As a consequence of the defendant's rejection of the government's proffered plea agreement, the defendant was hit with a raft of charges, which exploded his sentencing exposure significantly, so that the defendant now faced the very real prospect of life imprisonment without chance of release, whereas the plea agreement contemplated a maximum sentence of 96 months, and a recommended guidelines sentence of 70 to 87 months as punishment for an offense which the plea agreement envisioned as carrying a maximum sentence of 10 years imprisonment for conviction of 18 U.S.C. § 922(g) without any enhancement under the 15-year mandatory minimum provision of 18 U.S.C. § 924(e). Then, upon his foolish rejection of the government's most generous plea offer--a rejection that occurred solely because of his counsel's advice concerning his sentence exposure--advice erroneous in the extreme--and counsel's advice that he had "a good chance" of being acquitted at trial--the defendant discovered he was now charged with six offenses, which carried a possible punishment of life imprisonment without chance of release. The defendant, as a consequence of his rejection of the government's proffered plea agreement, was charged with: "Count One (Possession of a Firearm by a Previously Convicted Felon). Because defendant qualifies as an Armed Career Criminal, the statutory penalty for a violation of 18 U.S.C. § 922(g)(1) and 924(e)(1) is: not less than 15 years and not more than life imprisonment"; "Count Two (Possession of Cocaine [Base] with Intent to Distribute). The statutory penalty for a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) is: not more than 20 years imprisonment"; "Count Three . . . Possession [with Intent to Distribute] Methamphetamine"; "Count Four (Possession of a Firearm in Furtherance of a Drug-Trafficking Crime). The statutory penalty for a violation of 18 U.S.C. § 924(c)(1)(A) is: not less than 5 years and not more than life imprisonment [with sentence served consecutive to any other]"; and "Count Five/Six (Use of Another's Identity to Commit Unlawful Activity). The statutory penalty for a violation of 18 U.S.C. §§ 1028(a)(7) and (b)(3) is: not more than 20 years imprisonment." Sentencing Statement, provided by the government to the District Court in aid of the defendant's sentencing. Upon his conviction at trial of the above offenses, the defendant's "advisory guideline

range determined by the Court" was an "Imprisonment Range" of "262 to 327 months." Judgment in a Criminal Case, in the case of the defendant. The Court downwardly departed from the advisory guidelines sentencing range, "for the following reasons: The unique circumstances of the defendant's childhood, which contributed to his mental illness, pursuant to U.S.S.G. § 5K2.0 [;] [and] Diminished capacity not caused by the voluntary use of drugs or intoxicants, pursuant to U.S.S.G. § 5K2.13." The Court imposed concurrent sentences of 180 months imprisonment as punishment for the defendant's convictions on counts one, two and six; the Court imposed a concurrent sentence of 12 months as punishment for count three; the Court imposed a sentence of 60 months imprisonment for count four, "to run consecutively to the sentences imposed on counts one, two, three and six." Id. Thus, the defendant's true sentencing exposure was significantly greater than the sentencing exposure the defendant was assured by his counsel he would face upon conviction at trial.

At the conclusion of the Government's Response to the defendant's Motion Under 28 U.S.C. § 2255, the government declared:

> Finally, Movant alleges that, although Ms. England notified him of the terms of a plea agreement offered by the government, her advice about the offer "was so grossly incorrect and insufficient [that] it undermined his ability to make an intelligent decision" about whether to accept the offer or proceed to trial. § 2255 Motion at 8. Movant's allegation is merely conclusory in nature. He does not identify any advice given to him by Ms. England that was, in fact, "incorrect," nor does he identify any material advice that was omitted by Ms. England that rendered her advice "grossly . . . insufficient" and prevented him from making an intelligent decision about whether to accept the offer and which, if given by Ms. England, would have caused Movant to admit his guilt and waive his right to jury trial. Instead, Movant got precisely what the Constitution guarantees him, a trial by jury, and he has consistently--even to the present--maintained his innocense [sic] of the charges against him. Without the assertion by Movant of specific, plausible facts which, if proved, would demonstrate that an error by counsel of constitutional magnitude actually occurred and that Movant suffered prejudice therefrom, this Court can only conclude that Movant "is entitled to no relief" under § 2255. See 28 U.S.C. § 2255.

At the conclusion of the District Court's Order denying the defendant's Motion Under 28 U.S.C. § 2255, the District Court declared:

> Defendant-movant alleges lastly that, although Ms. England notified him of the terms of a plea agreement offered by the government, her advice about the offer "was so grossly incorrect and insufficient [that] it undermined his ability to make an intelligent decision" about whether to accept the offer or proceed to trial. § 2255 Motion at 8. Defendant-movant's allegation is merely conclusory in nature. He does not identify any advice given him by Ms. England that was, in fact, "incorrect"; nor does he identify any material advice that was omitted by Ms. England that rendered her advice "grossly . . . insufficient" and prevented him from making an intelligent decision about whether to accept the offer, and which, if given by Ms. England, would have caused the defendant-movant to admit his guilt and waive his right to a jury trial. Instead, defendant-movant received precisely what the Constitution guarantees: a trial by jury, and he has consistently--even to the present--maintained his innocense [sic] of the charges against him. Without the assertion by defendant-movant of specific, plausible facts which, if proved, would demonstrate that an error by counsel of constitutional magnitude actually occurred and that he suffered prejudice therefrom, this court can only conclude that defendant-movant "is entitled to no relief" under § 2255. See 28 U.S.C. § 2255.

The District Court, in its Order denying the defendant's Motion Under § 2255, fails to recognize that, in his Reply to the Government's Response, the defendant asserted "specific, plausible facts which, if proved, would demonstrate that an error by counsel of constitutional magnitude actually occurred and that [the defendant] suffered prejudice therefrom." Order of the District Court, of Sep. 30, 2010, denying the defendant's Motion Under 28 U.S.C. § 2255, at pp. 13--14; cf.: Government's Response to Defendant's Motion Under 28 U.S.C. § 2255, at p. 13. In his Reply to the government's Response, the defendant asserted, that at the critical stage in the proceedings when the defendant sought counsel's advice about whether to plead guilty or proceed to trial, and at the critical stage in the proceedings when the defendant made the decision whether to plead guilty or proceed to trial, the defendant's counsel, "Ms. England," "did not state the full sentence exposure [the defendant faced at trial] or [inform the defendant of] the additional charges that could be brought" against the defendant if he chose to reject the government's offered plea agreement and proceed to trial. Reply, at p. 3. (The Reply is titled: "Memorandum in Support of Section 2255 Petition.") In his Reply, the defendant further stated: "When Ms. England and the defendant were sitting in court as the superceding indictment was being read," after the defendant had rejected the government's proffered plea agreement upon counsel's advice, the defendant discovered that, "[i]nstead of just a weapons charge I thought and had been told [by counsel would be the exclusive charge] I would be facing[,] I [discovered to my surprise that I] was now charged with two counts of possession with intent to distribute [cocaine base and methamphetamine,] and one count of possession of a firearm in furtherance of a drug crime, which [mandates] an additional five years, consecutive sentence[,] [a]nd [an] additional charge of the use of another['s] identification to commit unlawful activity. As the court read these new [and totally unexpected] charges [against the defendant,] the defendant asked [his counsel] Ms. England why she did not inform him that this could be a possibility. Ms. England's reply was 'I'm just as shocked as you are David.'" Defendant's Reply, at p, 3. The defendant further asserted, in his Reply, that the defendant's counsel had provided this misinformation --concerning the defendant's sentence exposure-- to the defendant at the critical stage when the defendant made the decision whether to accept the government's proffered plea agreement or proceed to trial: "Defendant was also informed [by counsel] that for the very small amount of drugs [that had been seized] he would not get [or face] any time [in prison] let alone 20 years for . . . Cocaine." Reply, at p. 3. The defendant further asserted, in his Reply, at page 4, that his counsel had provided this gross misadvice at the critical stage when the defendant made the decision whether to accept the government's plea offer or proceed to trial: "Ms. England [the defendant's counsel] also informed the defendant that he would have to had 'brandished' the weapon in order to be found guilty of possession of a firearm and [Ms. England, the defendant's counsel,informed the defendant that she] thought there was a good chance of [the defendant's] being acquitted [at trial]." Thus it is clear the District Court simply ignored the defendant's assertion in the defendant's Reply of "specific facts which, if proved, would demonstrate that an error by counsel of constitutional magnitude actually occurred and that he suffered prejudice therefrom." Order of the District Court denying the defendant's Section 2255 Motion.

For some unexplained reason, the District Court, in its judgment denying the defendant's Motion Under 28 U.S.C. § 2255, failed to take notice of the fact the defendant, in his Reply, had asserted "specific facts which, if proved, would demonstrate that an error by counsel of constitutional magnitude actually occurred and that he suffered prejudice therefrom." Order of the District Court, of Sep. 30, 2010, denying the defendant's § 2255 Motion. The District Court's language reaching judgment on the issue of counsel's ineffective assistance, through counsel's misadvice concerning sentence exposure and erroneous advice to the defendant that he had a "good chance of being acquitted at trial" because "he would have to ha[ve] 'brandished' the weapon in order to be found guilty," Defendant's Reply, at p. 4, was language taken wholly and completely solely from the language and argument offered by the government in the government's Response to the defendant's Motion Under 28 U.S.C. § 2255. See: Government's Response, at p. 13; compare to the District Court's Order of Sep. 30, 2010, at pp. 13--14. We must note the government penned this language, later adopted verbatim by the District Court, before the defendant provided his Reply, which Reply then asserted the "specific facts which, if proved, would demonstrate that an error by counsel of constitutional magnitude actually occurred and that [the defendant] suffered prejudice therefrom." Order of the District Court, of Sep. 30, 2010. Thus, the District Court abused its discretion by failing to hold an evidentiary hearing, once the defendant, through his Reply, at pp. 3--4, asserted "specific facts which, if proved, would demonstrate that an error by counsel of constitutional magnitude actually occurred and that he suffered prejudice therefrom." Order of the District Court, of Sep. 30, 2010, denying the defendant's Motion Under 28 U.S.C. § 2255.

In Kafo v. United States, 467 F.3d 1063 (7th Cir. 2006), the Court of Appeals teaches us that, in a case such as the defendant's, an evidentiary hearing must be held in this matter. The Court of Appeals teaches us, in Kafo v. United States, 467 F.3d 1063, 1067--68 (7th Cir. 2006):

> We review the district court's decision to deny an evidentiary hearing for an abuse of discretion. Bruce v. United States, 256 F.3d 592, 597 (7th Cir. 2001). The governing statute, 28 U.S.C. § 2255, provides in pertinent part:
>
>> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.
>
> (emphasis added). We have interpreted this provision as not requiring an evidentiary hearing when a petitioner's allegations are "vague, conclusory, or palpably incredible rather than detailed and specific." Bruce, 256 F.3d at 597 (internal citations and quotation marks omitted). Conversely, we have held that a district court must grant an evidentiary hearing when the petitioner "alleges fact that, if proven, would entitle him to relief." Id. (internal citations and quotation marks omitted). . . . Our insistence that a petition under 28 U.S.C. § 2255 include an affidavit setting forth

> the specific basis for relief is nothing more than our enforcement of Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts. . . . There are salutary reasons for requiring strict observance of the affidavit requirement. . . . Before th[e] [extraordinary] remedy [of habeas corpus] can be invoked, a district court must assure itself that a threshold showing has been made that justifies the commitment of judicial resources necessary to accomplish this delicate and demanding task. In this respect, the verification requirement serves to ensure that a petitioner can provide some evidence beyond conclusory and speculative allegations, even if that evidence is his verified statement alone. [Emphasis added.]

In the present case, the defendant, through his Reply, offered his sworn affidavit--"his verified statement alone," id., providing the specific and detailed assertion that, at the critical stage in the proceedings when the defendant made the choice to reject the government's proffered plea agreement and instead proceed to trial, the defendant made his foolish decision to reject the government's proffered plea agreement and proceed to trial solely because the defendant's counsel/ misadvised the defendant concerning his sentence exposure and because counsel advised the defendant that he had a "good chance of being acquitted at trial" because "he would have to ha[ve] 'brandished' the weapon in order to be found guilty." Defendant's Reply, at p. 4. Thus the defendant, through his specific, detailed assertion, has sufficiently alleged"specific facts that, if proved, would demonstrate that an error of constitutional magnitude actually occurred and that he suffered prejudice therefrom." Order of the District Court denying the defendant's Section 2255 Motion, at 13-14. The defendant need offer only his own affidavit to support his contention that his counsel misadvised him concerning the consequences of his rejection of the government's proffered plea agreement and his chances of victory at trial, not to mention the gross misadvice the counsel provided concerning the length of the sentence the defendant would face upon conviction at trial (see: supra), in order for the defendant to gain an evidentiary hearing at habeas in this matter. See: Goodwin v. Johnson, 132 F.3d 162, 177-85 (5th Cir. 1997) (evidentiary hearing required when the Court of Appeals reverses the district court's denial of an evidentiary hearing on a Fifth Amendment claim, where the petitioner offered only his own affidavit to support his contention that he requested an attorney during police questioning). (cited in Kafo v. United States, 467 F.3d 1063, 1068, n. 8 (7th Cir. 2006), in support of the Kafo court's holding that "an affidavit by the movant is sufficient to warrant a hearing--more evidence is not necessary." Schotz v. United States, Nos. 07-2198 and 07-2199, Nov. 26, 2007, 7th Cir. ("The district court improperly denied Schotz an evidentiary hearing on his ineffective assistance of counsel argument. Schotz . . . submitted an affidavit in support of his argument. . . . The district court determines that the claim failed because Schotz did not support his argument with additional evidence beyond his own allegations. . . . [I]n such a circumstance, an affidavit by the movant is sufficient to warrant a hearing--more evidence is not necessary. See Kafo, 467 F.3d at 1067-68, 1071. . . . The district court was incorrect to require more of Schotz than his affidavit. . . .").) See also: Galbraith v. U.S., 313 F.3d 1001, 1009-10 (7th Cir. 2002):

> As this court has noted before, "'[i]t is the rule of this [c]ourt that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions.'" Prewitt, 83 F.3d at 819 (quoting Barry v. United States, 528 F.2d 1094, 1101 (7th Cir. 1976)).. . . [T]his court requires a district court to grant an evidentiary hearing if a § 2255 petitioner "alleges facts that, if proven would entitle him to relief," [Stoia v. United States, 22 F.3d 766] at 768 [7th Cir. 1994]. . . . [T]he threshold determination that the petitioner has sufficiently alleged such facts requires the petitioner to submit a sworn affidavit showing what specific facts support the petitioner's assertions. Prewitt, 83 F.3d at 819. . . . [F]actual allegations must be supported by an affidavit before we will require the additional step of an evidentiary hearing. Stoia, 22 F.3d at 768 (requiring evidentiary hearing for petition supported by affidavits). . . . Galbraith himself might have submitted a sworn affidavit recounting the facts of his plea hearing and surrounding events. . . . [A] sworn affidavit with specific details that showed Galbraith had actual proof of the conduct alleged was required as a predicate to securing an evidentiary hearing. Aleman, 878 F.2d at 1012 ("Mere unsupported allegations cannot support a request for a hearing.").

The defendant in this case supplied the district court with "a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." Id. The defendant in this case "allege[d] facts that, if proven would entitle him to relief." Id. The defendant submitted his sworn affidavit--his Reply to the Government's Response to the defendant's Section 2255 motion--which Reply "recount[ed] the facts of his plea . . . and surrounding events." Id. The defendant's Reply, at pp. 3--4, was "a sworn affidavit with specific details that showed [the defendant] had actual proof of the conduct alleged." Id. The defendant, in his Section 2255 motion, alleged that his counsel's"advice about the[government's offered plea agreement]'was so grossly incorrect and insufficient [that] it undermined his ability to make an intelligent decision' about whether to accept the offer or proceed to trial.[Defendant's Section]2255 Motion at 8." Gov. Response, at 13.

The government, in its Response, argued that the defendant's "allegation is merely conclusory in nature. [The defendant] does not identify any advice given to him by [his counsel] that was, in fact, 'incorrect,' nor does he identify any material advice that was omitted by [his counsel] that rendered [counsel's] advice 'grossly insufficient' and prevented him from making an intelligent decision about whether to accept the offer and which, if given by [counsel], would have caused [the defendant] to admit his guilt and waive his right to a jury trial. . . . Without the assertion by [the defendant] of specific, plausible facts which, if proved, would demonstrate that an error by counsel of constitutional magnitude actually occurred and that [the defendant] suffered prejudice therefrom, this Court can only conclude that [the defendant] 'is entitled to no relief' under § 2255. See 28 U.S.C. § 2255."

The district court, in its Order denying the defendant's Section 2255 Motion, adopted verbatim the argument offered in the Government's Response, concerning the defendant's lack of "assertion by the Movant of specific, plausible facts which, if proved, would demonstrate that an error by counsel of constitutional magnitude actually occurred and that Movant suffered prejudice therefrom." Government's Response, at 13. The District Court declared, at the conclusion of its Order of Sep. 30, 2010, denying the defendant's Motion Under 28 U.S.C. § 2255--at pp. 13--14:

> Defendant-movant alleges lastly that, although Ms. England notified him of the terms of a plea agreement offered by the government, her advice about the offer "was so grossly incorrect and insufficient [that] it undermined his ability to make an intelligent decision" about whether to accept the offer or proceed to trial. § 2255 Motion at 8. Defendant-movant's allegation is merely conclusory in nature. He does not identify any advice given him by Ms. England that was, in fact, "incorrect"; nor does he identify any material advice that was omitted by Ms. England that rendered her advice "grossly . . . insufficient" and prevented him from making an intelligent decision about whether to accept the offer, and which, if given by Ms. England, would have caused the defendant-movant to admit his guilt and waive his right to a jury trial. . . . Without the assertion by defendant-movant of specific, plausible facts which, if proved, would demonstrate that an error by counsel of constitutional magnitude actually occurrred and that he suffered prejudice therefrom, this court can only conclude that defendant-movant "is entitled to no relief" under § 2255. See 28 U.S.C. § 2255.

The District Court, in its Order of Sep. 30, 2010, denying the defendant's Motion Under Section 2255, ignored the fact the defendant had replied to the Government's Response, through the defendant's Reply, entitled "Memorandum in Support of Section 2255 Petition." The District Court, in its Order denying the defendant's Section 2255 Motion, ignored the fact the defendant had, through his Reply, supplied the District Court with the "assertion by defendant-movant of specific, plausible facts which, if proved, would demonstrate that an error of constitutional magnitude actually occurred and that he suffered prejudice therefrom." Order of the District Court, of Sep. 30, 2010, at pp. 13--14. The District Court wrote the section of its Order dealing with the defendant's most potent claim that his counsel was ineffective, by copying verbatim from and adopting the argument of the Government's Response, without recognizing that the problem asserted by the government's argument was cured by the defendant's provision, through his Reply to the Government's Response, of the "assertion by [the] defendant-movant of specific, plausible facts which, if proved, would demonstrate that an error of constitutional magnitude actually occurred and that he suffered prejudice therefrom." Order of the District Court, of Sep. 30, 2010. In his Reply, the defendant identified the advice given to the defendant by his counsel that was incorrect; the defendant, in his Reply, identified the material advice given to the defendant by his counsel that rendered counsel's advice grossly insufficient and prevented the defendant from making an intelligent decision about whether to accept the government's plea agreement offer or proceed to trial; the defendant, in his Reply, identified the advice given to the defendant by his counsel that misled the defendant to believe he would be acquitted at trial, based on his counsel's advice that the defendant had "a good chance" of winning at trial because the counsel assured the defendant he would have to be proved to have "brandished" the weapon to be found guilty of being a felon in possession of a firearm! Defendant's Reply, at pp. 3--4.

The defendant has thus provided to the District Court, through the defendant's Reply to the Government's Response, the "assertion of specific, plausible facts which, if proved, would demonstrate that an error by counsel of constitutional magnitude actually occurred and that he suffered prejudice therefrom." Order of the District Court, of Sep. 30, 2010. The "advice given [to the defendant] by [his counsel] that was, in fact, 'incorrect[,]' [and] . . . [the] advice [of counsel] given [to the defendant] by Ms. England that rendered her advice 'grossly . . . insufficient' and prevented [the defendant] from making an intelligent decision about whether to accept the [government's plea agreement] offer [or proceed to trial]," Order of the District Court of Sep. 30, 2010, was precisely asserted by the defendant through the defendant's Reply to the Government's Response, when the defendant asserted "specific, plausible facts which, if proved, would demonstrate that an error by counsel of constitutional magnitude actually occurred and that he suffered prejudice therefrom," Order of the District Court of Sep. 30, 2010. The defendant, in his Reply, asserted, at pp. 3--4:

> Ms. England did not state the full sentence exposure [the defendant faced] or the additional charges that could be brought [if the defendant failed to accept the government's offered plea agreement]. When Ms. England and the defendant were sitting in court as the superceding indictment was being read[, after the defendant had followed counsel's advice to reject the government's offered plea agreement and proceed to trial,] . . . [the defendant discovered that,] [i]nstead of just a weapons charges [sic] I thought and had been told I would be facing[,] I was now charged with two counts of possession with intent to distribute and one count of poss[ession] of a firearm in furtherance of a drug crime, which is an additional five years, consecutive sentence. And [I also discovered I was charged with an] additional charge of the use of another's identification to commit unlawful activity. As the court read these new charges the defendant asked Ms. England why she did not inform him that this could be a possibility. Ms. England[']s reply was[:] "I'm just as shocked as you are[,] David." Defendant was also informed [by counsel] that for the very small amount of drugs [seized] he would not get any time let alone [face] 20 years for 2.8 grams of Cocaine. . . . Ms. England also informed the defendant [when the defendant made the decision to reject the government's offered plea agreement] that he would have to ha[ve] "brandished" the weapon in order to be found guilty of possession of a firearm and [the defendant's counsel also informed the defendant that counsel] [therefore] thought there was a good chance of [the defendant] being acquitted [at trial].

The information presented by the defendant, through his sworn affidavit, was certainly the assertion of "specific, plausible facts which, if proved, would demonstrate that an error by counsel of constitutional magnitude actually occurred and that [the defendant] suffered prejudice therefrom." Order of the District Court of Sep. 30, 2010. The District Court, in its Order of Sep. 30, 2010, denying the defendant's Motion Under Section 2255, declared the defendant had not provided to the court "any advice given him by Ms. England that was, in fact, 'incorrect'; nor does he identify any material advice given him by Ms. England that rendered her advice 'grossly . . . insufficient' and prevented him from making an intelligent decision about whether to accept the[government's plea agreement] offer." Id.

It is obvious, from the assertions made by the defendant in his Reply to the Government's Response, that the defendant alleged specific, plausible facts which, if proved, demonstrate that an error by counsel of constitutional magnitude actually occurred and that the defendant suffered prejudice because of counsel's error. As the District Court notes in its Order of Sep. 30, 2010, the defendant must assert specific, plausible facts, and identify the misadvice the defendant received from counsel that caused the defendant to proceed to trial instead of accepting the government's plea offer. The District Court states, in its Order of Sep. 30, 2010, denying the defendant's Section 2255 Motion: "[The defendant] does not identify any material advice that was omitted . . . which, if given by Ms. England, would have caused the defendant-movant to admit his guilt and waive his right to a jury trial." Order of the District Court of Sep. 30, 2010. Through this statement by the District Court, the District Court identifies the precise prejudice suffered by the defendant: the fact that, had the defendant received the advice of competent counsel, the defendant most assuredly would have admitted his guilt and waived his right to a jury trial. The defendant has precisely identified the advice the defendant received from counsel which caused the defendant to reject the government's offered plea agreement and proceed to trial: the defendant asserted, in his Reply, at pp. 3--4: "Ms. England did not state the full sentence exposure [the defendant faced] or the additional charges that could be brought [if the defendant failed to accept the government's offered plea agreement]. . . . Ms. England also informed the defendant that he would have to ha[ve] 'brandished' the weapon in order to be found guilty of possession of a firearm and [that counsel] thought there was a good chance of [the defendant] being acquitted [at trial]." Based on counsel's gross misadvice, the defendant proceeded to trial, because his counsel assured him he had "a good chance of being acquitted," because "he would have to ha[ve] 'brandished' the weapon in order to be found guilty of possession of a firearm." Defendant's Reply, at pp. 3--4. This is the misadvice that caused the defendant to proceed to trial instead of accepting the government's generous plea offer. Counsel who provides such misadvice, coupled with counsel's misadvice concerning sentence exposure, in a case where the evidence against the defendant is overwhelming, and the defendant's conviction at trial is certain, provides advice that falls beneath the norms expected of counsel in federal proceedings. The defendant's counsel stated the defendant would be acquitted because the government would have to prove the defendant "brandished" a weapon in order to be found guilty of being a felon in possession of a firearm, and the counsel informed the defendant he could not be convicted, because he had not "brandished" the firearm! The counsel failed to inform the defendant of the true sentence exposure the defendant would face upon his rejection of the government's offered plea agreement; the counsel failed to inform the defendant of "the additional charges that could be brought" against the defendant as a result of the defendant's rejection of the government's offered plea agreement. Defendant's Reply, at pp. 3--4. The defendant, in his Reply, details the shock and surprise the counsel expressed when the defendant was hit with numerous additional charges because he had rejected the government's generous plea offer. Id. The defendant, in his Reply, states his counsel's reaction to the numerous and serious additional charges, which now exposed the defendant to the prospect of life imprisonment without chance of release, instead of the "70 to 87 months" imprisonment contemplated by the government's offered plea agreement, was for his counsel to exclaim: "I'm just as shocked as you are David."

Thus, the defendant, in his Reply, provided the District Court with a precise, specific identification of the "material advice that was omitted by Ms. England that rendered her advice 'grossly . . . insufficient' and prevented him from making an intelligent decision about whether to accept the [government's plea] offer, and which, if given by Ms. England, would have caused [the] defendant-movant to admit his guilt and waive his right to a jury trial." Order of the District Court, Sep. 30, 2010. The defendant identified the "material advice that was omitted by Ms. England," id., as being counsel's failure to "state the full sentence exposure" the defendant faced as a consequence of his rejection of the goverment's plea offer; see Defendant's Reply, at 3--4; the defendant also stated that his counsel had failed to inform the defendant of "the additional charges that could be brought" against the defendant as a consequence of his rejection of the government's offered plea agreement--a rejection counsel advised, because "Ms. England also informed the defendant that he would have to ha[ve] 'brandished' the weapon in order to be found guilty of possession of a firearm and [that counsel] thought there was a good chance of being acquitted at trial." Id.

The United States Court of Appeals for the Fifth Circuit teaches us: "One of the most important duties of an attorney representing a criminal defendant is advising the defendant about whether to plead guilty." United States v. Herrera, 412 F.3d 577, 580 (5th Cir. 2005) (citing Reed v. United States, 354 F.2d 227, 229 (5th Cir. 1965)). "An attorney fulfills this obligation by informing the defendant about the relevant circumstances and the likely consequences of a plea." Id. (citing Teague v. Scott, 60 F.3d 1167, 1170 (5th Cir. 1995); see also Childress v. Johnson, 103 F.3d 1221, 1227 (5th Cir. 1997) (citation omitted) ("It is clear that a defendant is entitled to the effective assistance of counsel in determining how to plead, . . . and can attack his conviction collaterally if not given this right.") Judge James declared, in U.S. v. Kimes, 624 F.Supp.2d 565, 570 (W.D.La. 2009): "In this case, the overwhelming weight of the evidence indicates that [counsel] failed to sufficiently advise [the defendant] about the possibility of a guilty plea and the benefits to his sentence that could have resulted therefrom." It is clear, in this case, that competent counsel would have provided advice that would have led the defendant to choose to plead guilty. It is clear, from the misadvice delivered to the defendant by his counsel, that the defendant was informed by counsel that he had "a good chance of being acquited," Defendant's Reply, in a case where conviction at trial was certain. It is clear, from the misadvice provided by the counsel to the defendant, that counsel stated the defendant could not be convicted of being a felon in possession of a firearm because he had not brandished the weapon. The counsel also informed the defendant that he would not face any drug charges as a consequence of his rejection of the government's generous plea offer, which contemplated a sentence for the defendant of only "70 to 87 months." See: Plea agreement offered by the government. See also: Defendant's Reply, at pp. 3--4. The defendant, upon conviction at trial, faced a guidelines sentence of "262 to 327 months" imprisonment. See: Judgment in a Criminal Case, of the District Court, in the case of the defendant, at p. 8. The defendant received a mandatory minimum sentence of 20 years imprisonment only because the District Court generously downwardly departed from the guidelines and imposed the most lenient sentence the District Court could impose, considering the mandatory minimum; the District Court reduced the defendant's sentence to the mandatory minimum 20 years (240 months) by providing the defendant with a downward departure due to the defendant's diminished mental capacity. See: Judgment in a Criminal Case, in the case of the defendant.

Thus, the defendant has demonstrated that he suffered prejudice from counsel's error. But for counsel's error, the result of the proceeding would have been different. The defendant sought to plead guilty, and even signed the government's offered plea agreement. Counsel for the defendant then convinced the defendant to proceed to trial; counsel told the defendant he should proceed to trial because he could not be convicted, because he had not "brandished" a firearm. See: Defendant's Reply, at pp. 3--4. No competent counsel could ever provide such gross misadvice, catastrophically prejudicial to the defendant. Had the defendant received the advice of competent counsel, he would have pled guilty through the government's offered plea agreement. Thus, our only remedy in this case is to place the defendant back in the position he would have been had the constitutional violation not occurred.

Judge Speigel teaches us, in Bucio v. Sutherland, 674 F.Supp.2d 882, 937--938 (S.D. Ohio): "Cases involving deprivations of the Sixth Amendment right to the effective assistance of counsel are . . . subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation." Satterlee v. Wolfenbarger, 374 F.Supp.2d 562, 569 (E.D.Mich. 2005) (citing United States v. Morrison, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981)). . . . The appropriate habeas remedy in this matter involves placing petitioner in the position he would have been but for the ineffective assistance of trial counsel. Turner v. Tennessee, 858 F.2d 1201, 1205 (6th Cir. 1988). . . . See also United States v. Allen, 53 Fed.Appx. 367, 373-74 (6th Cir. 2002) ("[I]f it were shown that defense counsel provided ineffective assistance, the remedy is to compel the government to reinstate the prior plea offer, restoring Mr. Allen to where he was before ineffective assistance was rendered."); Lewandowski v. Makel, 949 F.2d 884, 889 (6th Cir. 1991) ("The only way to efffectively repair the constitutional deprivation [the petitioner] suffered is to restore him to the position in which he would have been had the deprivation not occurred."). Therefore, the plea bargain that had been offfered to the petitioner by the government prior to trial should be reinstated and petitioner should be re-sentenced in accordance with the terms of the plea agreement. See Satterlee v. Wolfenbarger, 453 F.3d 362, 370 (6th Cir. 2006) ("Where . . . a defendant receives a greater sentence than one contained in a plea offer that he would have accepted if not for the ineffective assistance of counsel, the properly tailored remedy is to give the defendant the opportunity to accept the offer, because simply retrying the petitioner without making the plea offer would not remedy the constitutional violation that led to the issuance of the writ.").

The present case of the petitioner is almost perfectly anlagous to, indistinguishable from, and isomorphic to the case of United States v. Khong, Nos. 06-10288 and 07-16755, decided January 14, 2009, by the United States Court of Appeals for the Ninth Circuit. In U.S. v. Khong, the Court of Appeals declared (pp. 3--5):

We review de novo a district court's decision in a § 2255 motion and for clear error any factual findings made by the district court. . . . To establish a claim for ineffective assistance of counsel, Khong must demonstrate that his attorney's

performance "fell below an objective standard of reasonableness," and that the deficient performance prejudiced him. . . . Strickland v. Washington, 466 U.S. 668, 688 (1984). In the context of a plea bargain, he must prove that "but for counsel's bad advice the outcome of the plea bargaining would have been different." Id. at 948. Khong asserts that his attorney's performance was deficient because he incorrectly informed Khong of the possible sentencing exposure and the strenth of the government's case. Khong's attorney informed him that if he accepted the government's offer to plead guilty to conspiracy to distribute methamphetamine, his minimum possible sentence would have been 10 years. Because there was no legal impediment to the application of the safety valve provision in 18 U.S.C. § 3553(f), the correct possible minimum was 87 months. Khong's attorney also told him that if he went to trial, his probable sentence was between 14-16 years. In contrast, his maximum exposure by statute was life on one charge and 20 years on the other, and the applicable guideline range was 262-327 months (approximately 22-27 years). As to the strength of the government's case, Khong's attorney advised him he had a 50/50 chance of prevailing at trial. The attorney told Khong that his defense was that he had not committed an overt act in furtherance of the conspiracy. This advice utterly lacks legal merit. See United States v. Hernandez-Orellana, 539 F.3d 994, 1007 (9th Cir. 2008) (noting that proof of an overt act is not necessary for conviction of a drug conspiracy). . . . The district court found that Khong's trial attorney failed to correctly inform him about his possible sentencing exposure, but it determined that the deficient performance was not prejudicial because Khong believed the government's case was weak. Khong argues on appeal that he only believed the government's case was weak because his attorney told him it was. The district court incorrectly determined that the attorney's advice regarding the strength of the case was reasonable. This conclusion led the court to incorrectly conclude there was no prejudice because it failed to appropriately attribute Khong's belief the case was weak to his attorney's advice on that matter. But for counsel's advice regarding the strength of the government's case and incorrect advice regarding his possible exposure, there is a reasonable probability Khong would have accepted the plea offer. See Nunes v. Mueller, 350 F.3d 1045, 1051-52 (9th Cir. 2003). Therefore, we reverse the district court's denial of Khong's § 2255 motion, and remand for the district court to fashion a remedy that puts Khong "back in the position he would have been in if the Sixth Amendment violation never occurred." Id. at 1057 (internal quotation omitted).

The parallels between the case of United States v. Khong and the case of the present petitioner are striking. Khong received, upon his conviction at trial, a sentence of 14 years imprisonment. The present defendant received, upon his conviction at trial, a sentence of 20 years imprisonment. Khong was offered, by the government, a plea agreement that contemplated a guidelines sentence of 10 years imprisonment, which was the mandatory minimum sentence he would face, and the guidelines sentence he would receive upon his plea of guilty, absent application of the "safety valve" provision of 18 U.S.C. § 3553(f), which was inapplicable in his case because he refused to cooperate in any way with the government, and the "safety valve" provision mandates the defendant must provide truthful information about his offense, which in a drug offense means the defendant must inform the government truthfully concerning the identities of

others in a drug conspiracy, such as the individuals who supplied the defendant with drugs and the individuals to whom the defendant supplied drugs. Since Khong was unwilling to do this, he was thus ineligible for the "safety valve" provision of 18 U.S.C. § 3553(f). Thus, upon remand to the district court from the court of appeals, the district court ordered the government must reinstate its previous plea offer to Khong, and the matter was resolved through a plea agreement, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, which mandated Khong must receive the 10-year sentence of imprisonment offered by the government through the plea agreement Khong had rejected on the advice of counsel. Khong was told by his attorney that, if he rejected the government's plea offer, he would receive a probable sentence of 14 to 16 years imprisonment upon conviction. In reality, he faced a guidelines sentence of 262 to 327 months upon his conviction at trial, and he received a lenient sentence due only to the generosity of his sentencing judge, because Khong was a young man who had never before been convicted of a crime, before his conviction in state court for possession of a quarter of a gram of methamphetamine in connection with the drug conspiracy for which he received his federal conviction. In the case of the present defendant, the defendant faced, at sentencing, a guidelines sentence of 262 to 327 months, upon his conviction at trial after his rejection of the government's plea offer. See: Judgment in a Criminal Case, of the District Court, in the case of the defendant. In the present case, the defendant had been advised by counsel to reject the government's plea offer, because the counsel advised the defendant "that he would have to ha[ve] 'brandished' the weapon in order to be found guilty of possession of a firearm and [that counsel] thought there was a good chance of the[defendant] being acquitted at trial." Defendant's Reply, at 3--4.Moreover, the defendant, in his Reply, at pp. 3--4, asserted: "Ms. England [the defendant's counsel] did not state the full sentence exposure [the defendant faced] or the additional charges that could be brought [if the defendant failed to accept the government's offered plea agreement, when the defendant made the decision whether to accept the government's proffered plea agreement or proceed to trial]. When Ms. England and the defendant were sitting in court as the superceding indictment was being read[, shortly after the defendant had, upon counsel's advice, rejected the government's offered plea agreement, the defendant discovered that,] [i]nstead of just a weapons charge[] I thought and had been told [by counsel] I would be facing[,] I was now charged with two counts of possession with intent to distribute [narcotics, which carried a possible sentence of life imprisonment without chance of release] and one count of possession of a firearm in furtherance of a drug crime, which [carried] an additional[, mandatory] five years, consecutive sentence. And [I also discovered I was charged with an] additional charge of use of another's idenitification to commit unlawful activity. As the court read these new charges the defendant asked Ms. England why she [had] not inform[ed] him that this could be a possibility [upon the defendant's rejection of the government's proffered plea agreement]. Ms. England['s] reply was[:] 'I'm just as shocked as you are[,] David.' Defendant was also informed [by counsel] that for the very small amount of drugs [seized] he would not get [or face] any time [in prison] let alone [face] 20 years [which the defendant received upon conviction] for [possession with intent to distribute] 2.8 grams of Cocaine." The statements of the court of appeals in its judgment granting relief to petitioner Khong are appropriate to the case of the present defendant:

"But for counsel's advice regarding the strength of the government's case and incorrect advice regarding his possible exposure, there is a reasonable probability Khong would have accepted the plea offer. See Nunes v. Mueller, 350 F.3d 1045, 1051-52 (9th Cir. 2003). Therefore, we reverse the district court's denial of Khong's § 2255 motion, and remand for the district court to fashion a remedy that puts Khong 'back in the position he would have been in if the Sixth Amendment violation never occurred.' Id. at 1057 (internal quotation omitted)." United States v. Khong, Nos. 06-10288 and 07-16755, Jan. 14, 2009 (9th Cir.).

The United States Court of Appeals for the Tenth Circuit recently dealt with a case that is closely analagous to, indistinguishable from, and closely isomorphic to the case of the present defendant. In Williams v. Jones, 571 F.3d 1086 (10th Cir. 2009), the Court of Appeals presented an opinion that cogently and clearly states the law of our Circuit Courts of Appeals concerning a case where "but for counsel's deficient performance in advising [the defendant] to reject [a] plea offer, there was a reasonable probability that [the defendant] would have accepted the offer, pled guilty . . . and been sentenced to only 10 years in prison [instead of the sentence of life imprisonment without possibility of parole the defendant received upon his conviction at trial]." Id., 571 F.3d at 1087 (West Headnote No. 2). The Court of Appeals teaches us, in Williams v. Jones, 571 F.3d 1086--1094 (10th Cir. 2009)(including Note 3):

> Hill v. Lockhart, 474 U.S. 52, 56-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), is the most specific case in the plea context . . . [concerning when a defendant may prevail on an ineffective assistance claim]. . . . [A] defendant may prevail on an ineffective assistance claim in this context by demonstrating deficient performance and prejudice, viz., a defendant is required to show that counsel's performance fell below an objective level of reasonableness and that, but for counsel's deficient performance, the defendant would have accepted the plea offer and pled guilty. United States v. Carter, 130 F.3d 1432, 1442 (10th Cir. 1997); see also Hill, 474 U.S. at 58-59, 106 S.Ct. 366 (similar test for ineffective assistance of counsel when deficient performance results in acceptance of plea); United States v. Mathis, 503 F.3d 150, 152 (D.C.Cir. 2007); Julian v. Bartley, 495 F.3d 487, 497-500 (7th Cir. 2007); Satterlee v. Wolfenbarger, 453 F.3d 362, 370 n. 7 (6th Cir. 2006); United States v. Merritt, 102 Fed. Appx. 303, 307 (4th Cir. 2004); Nunes v. Mueller, 350 F.3d 1045, 1054-56 (9th Cir. 2003); Wanatee v. Ault, 259 F.3d 700, 703-04 (8th Cir. 2001); Smith v. Singletary, 170 F.3d 1051, 1053 (11th Cir. 1999); United States v. Gordon, 156 F.3d 376, 380-82 (2d Cir. 1998); Teague v. Scott, 60 F.3d 1167, 1170-71 (5th Cir. 1995). . . . [I]n deciding the remedy for ineffective assistance, the court [must] . . . apply . . . the principle that the remedy must be tailored to the injury. United States v. Morrison, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). . . . The plea bargaining process is a critical stage of a criminal prosecution. Nunes v. Mueller, 350 F.3d 1045, 1053 (9th Cir. 2003); see Iowa v. Tovar, 541 U.S. 77, 81, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) (entry of the guilty plea is a critical stage in the criminal process); Burger v. Kemp, 483 U.S. 776, 803-04, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (pretrial plea negotiations are a critical stage of the criminal process). Accordingly, the Sixth Amendment applies to representation during the plea process. Hill v. Lockhart,

474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). . . . The deficient performance was counsel's advice concerning the plea agreement--advising Mr. Williams . . . [not to] . . . accept[] the plea offer and insisting that Mr. Williams proceed to trial. . . . [T]he prejudice Mr. Williams identified was that, had he been adequately counseled, there is a reasonable probability that he would have accepted the plea offer and limited his exposure to ten years. See Julian v. Bartley, 495 F.3d 487, 498-99 (7th Cir. 2007); Satterlee v. Wolfenbarger, 453 F.3d 362, 370 n. 7 (6th Cir. 2006); Nunes, 350 F.3d at 1054-55; Wanatee v. Ault, 259 F.3d 700, 703-04 (8th Cir. 2001); see also [United States v.] Carter, 130 F.3d [1432,] at 1442 [10th Cir. 1997]. . . . [T]he ineffective assistance occurred when the plea offer was available. The evidence . . . suggests a reasonable probability that the plea offer would have been accepted but for counsel's ineffective assistance. See Satterlee, 453 F.3d at 370 n. 7; Magana v. Hofbauer, 263 F.3d 542, 551 (6th Cir. 2001). . . . [W]e are dealing with an offer that was rejected because of defense counsel's ineffective assistance, with disastrous results for [the defendant]. . . . [The state court of appeals] recognized the obvious merit of reinstating the plea offer were it possible--it would address the prejudice [the defendant] suffered. See Satterlee, 543 F.3d at 370 n. 7; United States v. Blaylock, 20 F.3d 1458, 1468 (9th Cir. 1994). . . . [A] defendant in these circumstances may be entitled to a remedy if he can prove deficient performance and prejudice, i.e., "that but for his lawyer's advice, he would have taken the plea offer." Julian, 495 F.3d at 497; see Carter, 130 F.3d at 1442; supra n. 3 (identifying ten circuits [that follow the same rule as the Tenth Circuit]). . . . [The defendant] was entitled to the effective assistance of counsel during plea negotiations, including the decision whether to accept or reject the plea offer. See Nunes, 350 F.3d at 1052-53. He was thereby prejudiced because had he been adequately counseled, there is a reasonable probability that he would have accepted the plea offer and limited his exposure to ten years. . . . [T]he [government] made an offer that [the defendant] had a right to accept, as long as it was open, with effective assistance of counsel. See . . . Strickland, 466 U.S. at 688, 104 S.Ct. 2052 (part of counsel's duty is to assist the defendant and consult with him on important decisions); Bordenkircher v. Hayes, 434 U.S. 357, 362, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (discussing the importance of counsel during plea negotiations).

The United States Court of Appeals for the Sixth Circuit teaches us, in Smith v. U.S., 348 F.3d 545, 550--554 (6th Cir. 2003):

A prisoner who files a motion under Section 2255 challenging a federal conviction is entitled to "a prompt hearing" at which the district court is to "determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. The hearing is mandatory "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Fontaine v United States, 411 U.S. 213, 215, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973) (citation omitted). . . . "Where there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." Turner v. United States, 183 F.3d 474, 477 (6th Cir. 1999). . . .

We have observed that a Section 2255 petitioner's burden "for establishing an entitlement to an evidentiary hearing is relatively light." Id. at 477. . . . [T]he attorney has a clear obligation to fully inform her client of the available options. . . . [I]n the context of the modern criminal justice system, which is driven largely by the Sentencing Guidelines . . . [a] criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available. In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges and penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time. See United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992) (Observing that "the Sentencing Guidelines have become a critical, and in many cases,dominant facet of federal criminal proceedings" such that "familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation."). The criminal defendant has a right to this information, just as he is entitled to the benefit of his attorney's superior experience and training in the criminal law. The record in this case leaves us in considerable doubt over the nature and quality of the advice [the defendant] received before he made his final decision to reject the government's proposed plea bargain. . . . The failure of defense counsel to "provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance." Moss v. United States, 323 F.3d 445, 474 (6th Cir. 2003). See also Magana, 263 F.3d at 550 (holding that the defense counsel's erroneous advice concerning sentence exposure "fell below an objective standard of reasonablenss under prevailing professional norms"); Day, 969 F.2d at 43 (holding that incorrect advice about sentence exposure as a potential career offender undermined the defendant's ability to make an intelligent decision about whether to accept a plea offer). Whether the petitioner had this information before he rejected the plea offer is also an important factor in the consideration of the reasonable likelihood that a properly counseled defendant would have accepted the government's guilty plea offer. [The defendant] should have been given the opportunity at an evidentiary hearing to develop a record on these factual issues in the lower court.

The United States Court of Appeals for the Tenth Circuit recently ruled, in United States v. Washington, 10th Cir., No. 08-3313, 9/30/10, that a defense attorney's failure to understand and advise his client about the significance of the "relevant conduct" concept of the U.S. Sentencing Guidelines amounted to ineffective assistance of counsel in violation of the Sixth Amendment. The Court of Appeals ruled in United States v. Washington, supra:

We conclude that counsel's failure to understand the basic mechanics of the sentencing guidelines and, in particular, his failure to advise [the defendant] regarding the impact of relevant conduct on his potential sentence . . . amounted to constitutionally deficient performance under Strickland v. Washington, 466 U.S. 668 (1984). . . . [T]he record reflects

that [the defendant] was never in any way informed about the applicability or impact of relevant conduct because his counsel did not understand its significance in the sentencing scheme. As a panel of this court has pointed out, "failing to predict a sentence correctly is not the same as failing to understand the mechanics of the sentencing guidelines. . . ." . . . Counsel's wholesale failure in the instant case to grasp the sentencing process . . . may constitute representation that falls below the objective standard of reasonableness.

The language of the Court of Appeals' decisions in Williams v. Jones, 571 F.3d 1086--1094 (10th Cir. 2009), and United States v. Washington, 10th Cir., No. 08-3313, 9/30/10, supra, applies directly to the case of the present petitioner. We have shown that the defendant, through his Reply, has alleged that his counsel never informed the defendant of the fact that, as a result of the defendant's rejection of the government's offered plea agreement, the defendant would face a bevy of new charges which would increase the defendant's sentence exposure from the plea agreement's contemplated sentence of "70 to 87 months" to a guidelines sentence of 262 to 327 months. Certainly such an exponential misunderstanding of the criminal statutes applicable to the defendant and consequent misadvice provided to the defendant, constitutes deficient and catastrophically prejudicial performance by the defendant's counsel, when the defendant made the critical decision whether or not to accept the government's proffered plea agreement. Moreover, the defense counsel misinformed the defendant that he would have to have brandished the weapon to be found guilty of being a felon in possession of a firearm; this gross misadvice sorely prejudiced the defendant by influencing the defendant to believe he would have a "good chance" of winning acquittal at trial, when in reality the counsel failed to understand that, to convict a defendant of the crime of being a felon in possession of a firearm, there is no "brandishing" requirement--the government must prove only that the felon possessed the firearm, through active or constructive possession. Counsel's failure to understand the basic mechanics of the 922(g) statute in this regard surely prejudiced the defendant, by counsel's misadvice causing the defendant to accept counsel's incorrect view that the defendant had a "good chance" of acquittal at trial based on this bogus theory concerning the need for the government to prove "brandishing" in order to convict the defendant of being a felon in possession of a firearm.

When the defendant was faced with a raft of new charges, the defendant's counsel stated she was shocked and surprised that her client could face such heavy penalties as a direct result of the defendant's receiving gross misadvice from the counsel concerning the consequences the defendant could face as a result of his rejection of the government's offered plea agreement. If the defendant had received competent counsel, the defendant would have most certainly accepted the government's plea offer and pled guilty.

The language the court of appeals used in its judgment in Smith v. U.S., 348 F.3d 545, 550-554 (6th Cir. 2003), applies to the case of the present defendant, because the district court in the case of the present defendant clearly abused its discretion by failing to hold an evidentiary hearing in a case where the defendant has alleged facts which, if proved true, entitle the defendant to relief. In the present case, the district court failed to recognize the defendant had provided the specific, plausible facts which, if proved true, would entitle the defendant to relief, when the defendant provided these specific, plausible facts concerning counsel's misadvice when the defendant provided his sworn affidavit to the district court through the defendant's Reply to the Government's Response to the defendant's Section 2255 motion. Nothing more than the provision of the defendant's own specific, plausible factual allegations, provided through his sworn affidavit, was necessary to require the district court to hold the evidentiary hearing that thus became mandatory in this case. See: Kafo v. United States, 467 F.3d 1063, 1067-68, 1071 (7th Cir. 2002).

The district court, in its judgment denying the defendant's Section 2255 motion, clearly overlooked the fact the defendant had provided and asserted the "specific, plausible facts which, if proved, would demonstrate that an error by counsel of constitutional magnitude actually occurred and that [the defendant] suffered prejudice therefrom." Order of the District Court denying the defendant's Section 2255 motion. See: Kiendra v. Hadden, 763 F.2d 69, 71-72 (2d Cir. 1985) (reaching merits of claim omitted from petition but raised in affidavit in opposition to state's response). See also: Ross v. Kemp, 785 F.2d 1467, 1478 (11th Cir. 1986) (record enlarged on appeal to avoid successive litigation); Petty v. McCotter, 779 F.2d 299, 302 (5th Cir. 1986) (pro se petitioner may supplement claim with facts alleged for first time on appeal). "The primary purpose of a habeas corpus proceeding is to make certain that a man is not unjustly imprisoned." Townsend v. Sain, 372 U.S. 293, 317, 9 L.Ed.2d 770, 788, 83 S.Ct. 745 (1963) (internal quotation marks and citation omitted). "Where the facts are in dispute, the federal court in habeas must hold an evidentiary hearing. . . ." Id., 372 U.S., at 312, 9 L.Ed.2d, at 785. As a result of the district court's abuse of its discretion in failing to hold the mandatory, required evidentiary hearing in this case, the defendant suffered a further denial of his right to counsel, because Rule 8(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts mandates: "If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Justice Stevens declared, delivering the opinion of the Court in Penson v. Ohio, 488 U.S. 75, 84, 102 L.Ed.2d 300, 311, 109 S.Ct. 346 (1988): "It bears emphasis that the right to be represented by counsel is among the most fundamental of rights. . . . As a general matter, it is through counsel that all other rights of the accused are protected: 'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have.' Schaefer, Federalism and State Criminal Procedure, 70 Harv L Rev 1, 8 (1956)." "[A] habeas petitioner . . . has . . . a right to a hearing where one is necessary to prove the facts supporting his claim. [citing cases]." Justice O'Connor, dissenting, in Keeney v. Tamayo-Reyes, 504 U.S. 1, 15, 118 L.Ed.2d 318, 333, 112 S.Ct. 1715 (1992).

Justice Holmes, delivering the opinion of the Court in Moore v. Dempsey, 261 U.S. 86, 92, 67 L.Ed. 543, 43 S.Ct. 265 (1923), declared: "[I]t does not seem to us sufficient to allow a Judge of the United States to escape the duty of examining the facts for himself [through an evidentiary hearing] when if true as alleged they make the trial absolutely void." "District courts" need to hold evidentiary hearings "to resolve claims based on an incomplete record," Justice O'Connor declared, dissenting in Keeney v. Tamayo-Reyes, supra, 504 U.S. at 20, 118 L.Ed.2d at 336. Justice Stewart, delivering the opinion of the Court in Blackledge v. Allison, 431 U.S. 63, 72 et seq., 52 L.Ed.2d 136, 146 et seq., 97 S.Ct. 1621 (1977), declared:

> In Machibroda v United States, [368 US 487], 7 L Ed 2d 473, 82 S Ct 510 [1962], . . . [t]his Court noted that the [habeas petitioner's] allegations, if proved, would entitle the defendant to relief, and that they raised an issue that could not be resolved simply on the basis of an affidavit from the prosecutor denying the allegations. Because those allegations "related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light," 368 US at 494-495, 7 L Ed 2d 473, 82 S Ct 510, and were not so "vague [or] conclusory,"id., at 495, 7 L Ed 2d 473, 82 S Ct 510, as to permit summary disposition, the Court ruled that the defendant was entitled to the opportunity to substantiate them at an evidentiary hearing. The later case of Fontaine v. United States, 411 US 213, 36 L Ed 2d 169, 93 S Ct 1461 [1973], followed the same approach.

Judge Easterbrook noted, in Taylor v. U.S., 287 F.3d 658, 660-661 (7th Cir. 2002), the circumstances in which an evidentiary hearing must be held:

> "[I]f the record contains an evidentiary conflict on a material issue of fact, a judge must hold an evidentiary hearing to decide who is telling the truth. It is not sound to say that, in every conflict between a prisoner and a lawyer, the lawyer must be believed. . . . [T]o create a material dispute the evidence . . . must be specific."

The defendant in this case presented to the court his own affidavit, through his Reply to the Government's Response, which provides evidence in the record that the defendant's counsel misled the defendant concerning the sentencing exposure the defendant would face if the defendant chose to reject the government's plea offer. The defendant, through his Reply, alleged defense counsel had informed the defendant that the defendant could not be convicted at trial, because the defendant would have to have brandished the weapon to be convicted of being a felon in possession of a firearm, and thus the counsel advised the defendant to proceed to trial based on a legal theory that had absolutely no merit. The defendant, through his Reply--presented as an affidavit, provided specific, plausible factual allegations that, when the defendant made the decision whether to accept the government's plea offer or proceed to trial, his counsel "did not state the full sentence exposure" the defendant would face "or the additional charges that could be brought" against the defendant as a consequence of the defendant's rejection of the government's plea offer and his decision to proceed to trial. See: Defendant's Reply, at 3--4. The defendant stated his counsel's response to the unvailing of new charges against her client, as a result of the client's acceptance of counsel's erroneous advice concerning the sentencing exposure the defendant would face and the defendant's consequent rejection of the government's plea offer, was to exclaim: "I'm just as shocked as you are[,] David." Id.

The court of appeals teaches us, in Kafo v. U.S., 467 F.3d 1063, 1070-71 (7th Cir. 2006): "Had [the defendant submitted an affidavit], the statements [the defendant] made in his [Section 2255] motion would have constituted at least some evidence of his allegations with respect to his counsel's alleged failure [to provide effective assistance of counsel]. Certainly, the amended motion contains allegations of sufficient specificity to permit the district court to make at least a threshold evaluation of them. . . . [T]he amended petition submitted by [the defendant] . . . certainly provides a sufficient statement of [the defendant's] allegation to permit further evaluation. Because the district court explicitly noted a complete lack of evidence of the claimed ineffectiveness and because the petition itself would have been at least some evidence had it appropriately been verified, [i.e., if it had been presented as an affidavit,] we cannot say that the district court would have reached the same conclusion [to deny the petitioner an evidentiary hearing and to deny the defendant's petition] if [the defendant] had been instructed to so amend his pleading [i.e., to present his pleading as an affidavit]. For this reason, we believe that the appropriate course is to vacate the judgment of the district court in order to permit the petitioner an adequate opportunity to submit a verified version of the amended complaint [i.e., through an affidavit] or a supplemental affidavit."

Issue 3 on Appeal. The district court abused its discretion by failing to reach a merits determination on,and by failing to hold an evidentiary hearing concerning,the defendant's claim that his counsel had provided ineffective assistance through counsel's failure to investigate the defendant's history of mental illness and the defendant's lack of competency before the counsel conducted the defense at trial. The defendant raised this issue in his Section 2255 motion, as part of his Claim Three, at p. 7. The language of the defendant's motion in this regard should have been liberally construed as a pro se allegation that defense counsel failed to investigate the defendant's history of serious mental illness before advising the defendant concerning plea negotiations. Before the defendant made the decision to reject the government's plea offer and proceed to trial, the defendant told his counsel: "You need to get my psychiatric records. It's very important. I was under psychiatric care as a child, as an adult, and in prison. I watched my father kill himself when I was five years old. He shot himself. I hear voices. I'm hearing them right now [at the Federal Detention Center, in Englewood, CO]. I have racing thoughts. I can't concentrate. They are not giving me my meds. I need my Wellbutrin. I suffer from PTSD--I was diagnosed with this as a child, and in prison. Contact Dr. Fukutaki, she treated me in Colorado state prison. I suffer from severe depression." Instead of investigating the defendant's history of serious mental illness, and instead of seeking a competency hearing and evaluation for her client, the counsel ignored counsel's duty to investigate. In Williamson v. Ward, 110 F.3d 1508, 1516 (10th Cir. 1997), this Court held that counsel's decision to limit mental health investigation to scant and outdated documents and counsel's failure to seek a competency test constituted ineffective assistance. In McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001), this Court held that the defendant's right to due process was violated by failure to hold a competency hearing because of the defendant's history of mental illness, evidence the defendant was not properly medicated during trial, and counsel's contentions that the defendant was unable to assist in his defense. In Tiller v. Esposito, 911 F.2d 575, 578 (11th Cir. 1990), it was held that due process was violated by failure to conduct a competency hearing because the defendant claimed auditory and visual hallucinations at time of

the offense, a family history of mental illness, and diagnosis of severe paranoid schizophrenia, inter alia. The defendant in the present case, through his Reply, at pp. 1--2, clearly raised this issue of counsel's ineffectiveness for failure to investigate the defendant's history of mental illness and the defendant's competency.

Issue 4. The district court abused its discretion when it improperly denied the defendant, who is indigent, in forma pauperis status.

5. Relief Requested. The defendant requests this Court vacate the judgment of the district court and remand this case to the district court with instructions the district court must hold the evidentiary hearing required to determine the merit of the defendant's claims that his counsel provided ineffective assitance of counsel concerning the issues raised in Issues 2 and 3 presented in this application for a COA. The defendant further asks this Court to instruct the district court to apply to the judgment of the defendant's case the reasoning supplied by the district court and the court of appeals in Mask v. McGinnis, 233 F.3d 132 (2d Cir. 2000), and Mask v. McGinnis, 28 F.Supp.2d 122 (S.D.N.Y. 1998). It is clear the defendant in the present case would have accepted the government's offered plea agreement had the defendant received the effective assistance of counsel that was denied to him by counsel's unprofessional and prejudical errors. The government's offered plea agreement declared: "The defendant had been previously convicted of, among other offenses punishable by more than one year of incarceration, the following: (i) felony Unlawful Distribution of a Schedule 2 Controlled Substance . . .;(ii) felony Second Degree Burglar . . .; (iii) felony Second Degree Burglary . . .; and (iv) felony Attempted Escape. . . . Based upon the facts known at this time regarding Defendant's criminal history, the parties believe that Defendant falls within Criminal History Category ("CHC") V. § 4B1.4. . . . The guideline range resulting from the estimated offense level of 21 and the estimated criminal history category of V is 70 to 87 months. However, the imprisonment range could be from 37 months (bottom of CHC IV) to 96 months (top of CHC VI)." Plea Agreement, at pp. 3--4. Most important, the Plea Agreement declares: "The armed career criminal adjustment tentatively do[es] not apply, as defendant's two burglary convictions were of businesses.§ 4B1.4." Id., at p. 4. The Plea Agreement asked only that the "Defendant agrees to plead guilty to Count One of the Indictment, charging a violation of 18 U.S.C. § 922(g)(1), Possession of a Firearm by a Prohibited Person." Id., at p. 1. Thus the plea agreement clearly contemplated a maximum sentence of 10 years (the maximum sentence allowable for a defendant convicted of 922(g) who is not an "armed career criminal"). The plea agreement contemplated an "imprisonment range[that] could be from 37 months . . . to 96 months." Id. Judge Chin teaches us, in Mask v. McGinnis, 28 F.Supp.2d 122, 125-26 (S.D.N.Y. 1998): "Whether the government made a formal plea offer was irrelevant because the petitioner was prejudiced by not having accurate information upon which to decide whether to pursue further plea negotiations. . . . [T]he record demonstrates that there is a reasonable probability that the prosecutor would have been willing to offer a more favorable plea. . . . The[] comments [of the prosecutor] reasonably suggest that the prosecutor would have been willing to offer a lesser sentence if the law permitted. . . . Hence, a reasonable possibility exists that if defense counsel had [provided effective assistance] . . . additional negotiations would have been pursued and the prosecutor probably would have been willing to offer a sentence in the range that petitioner would have found reasonable--eight to sixteen years. Under these circumstances, my confidence in the outcome of the proceedings is certainly undermined. . . . [P]etitioner's application for a writ of habeas corpus will be granted, unless respondents agree to (i) reduce petitioner's sentence to a term of eight to sixteen years or (ii) grant him a new trial [where he will have the opportunity to plead guilty to the indictment and achieve a plea agreement and appropriate resentencing]."In the case of the present defendant, it is clear the prosecution would have been willing to offer the defendant a plea offer that provided identical punishment to the punishment the government sought through the plea agreement offered to the defendant. It is clear that, had counsel been effective, counsel would have sought, and the government would have assented, to the defendant's plea of guilty to 922(j) (possession of a stolen firearm), which provides punishment identical to the punishment contemplated by the plea agreement for violation of 922(g). Therefore, the defendant, once the determination that counsel was ineffective has been established through the evidentiary hearing, must be allowed to plead guilty and be sentenced in accordance with the contemplated punishment range established by the government's offered plea agreement, which can be most equitably gained through an order of the Court that the government must reinstate the plea offer the defendant would have gained had counsel provided effective assistance:a plea of guilty to one count of 922(j), which carries identical punishment to the punishment sought through the Plea Agreement.

DAVID L. HARTMAN # 32466-013
FEDERAL CORRECTIONAL INSTITUTION
1900 SIMLER AVE.
BIG SPRING, TX. 79720

[redacted]




MIDLAND TX 797
MON 29 NOV 2010 PM

RECEIVED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
DEC 03 2010
GREGORY C. LANGHAM
CLERK

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
ALFRED A. ARRAJ COURTHOUSE
901-19TH ST., ROOM A105
DENVER, CO. 80294-3589