Exhibit 3

Corrective Action Plan issued by State of Colorado Parole Officer, for the defendant. This document was given to the defendant's counsel by the federal government, as part of the discovery materials supplied by the government to the defendant. The document was received by the defendant's counsel before the counsel advised the defendant concerning the government's offered plea agreement. Please note that, on page 2 of the document, the Parole Officer of the State of Colorado has noted that, as of the date of document, May 5, 2003, Parole Officer "Team Leader J.D. Pyatt . . . says [the defendant] is clinically depressed and not on meds (Wellbutrin). Needs meds. . ." The defendant was arrested on the present charges of conviction on June 23, 2003. The defendant was not taking his medication solely because he had lost his insurance coverage and was unemployed and thus was unable to afford to pay for the required medication.

DEPARTMENT OF CORRECTIONS
Adult Parole, Community Corrections, and YOS

## Sanction Form

☐ Community Corrections ☒ Parole ☐ YOS

PAROLE
Program

—
Sanction No. (for Community Corrections and YOS only)

HARTMAN DAVID L 48309
Offender Name (Last) (First) (MI) DOC#

1. Violation: (Class_____ Rule_____) (Parole Condition Number 10) A: MENTAL HEALTH TX B: DRUG ALCOHOL TX
2. Violation: (Class_____ Rule_____) (Parole Condition Number 4)
3. Violation: (Class_____ Rule_____) (Parole Condition Number 2)

8

Narrative Description of Violation

#10 A&B:
- ON 4/7/03 PAROLEE MISSED MENTAL HEALTH / DRUG ALCOHOL TX. "VERY WITHDRAWN"
- ON 4/21/03 PAROLEE LEFT THERAPY SESSION. HE LEFT EARLY & WALKED OUT. DID NOT PAY.
- ON 4-23-03; LETTER FROM TX PROVIDER: Δ'S BEHAVIOR IS TROUBLING

#4:
- Δ MISSED PERSONAL OFFICE VISIT ON 4-17-03.

#2:
ON 5-1-03 PO CALLED Δ'S RESIDENCE OF RECORD & WIFE REPORTED THAT Δ HAS NOT STAYED @ HOME SINCE 4-21-03.

#8: UA ON 4-23-03 POSITIVE FOR COCAINE (Δ will NOT ADMIT USE).

☆ STAFFED W TEAM LEADER J.D. PYATT. Δ IN PERSONAL OFFICE VISIT SAYS HE IS CLINICALLY DEPRESSED AND NOT ON MEDS (WELLBUTRIN) NEEDS MEDS & CASE TO BE TRANSFERRED TO ISP RAM OFFICER.

**Corrective Action Plan**

☐ Community Corrections ☐ Parole ☐ YOS

HARTMAN, DAVID L 48309

Name (Last) First MI DOC#

Sanction Number (Community Corrections & YOS only)

1. ISP 180 DAYS

Sanction

2. __________

Sanction

| Date of Arrest/Detention | Date to be Released | Date Start Sanction #1 | Date Sanction #1 Ends |
|---|---|---|---|
| | | 5/5/03 | 11/5/03 |

| Date Start Sanction #2 | Date Sanction #2 Ends |
|---|---|
| | |

1. ISP 180 DAYS

Corrective Action/Modification

2. TAKE PRESCRIBED MEDICATIONS

Corrective Action/Modification

/s/ [signature] J.P. K. 5-5-03 5/5/03

Community Parole Officer Date

**Offender Waiver of Code of Penal Discipline/ Parole Revocation Hearing**

[ ]__ I do not admit to the allegation(s) as stated. I waive all rights to a Code of Penal Discipline/Parole Revocation Hearing and I accept the Corrective Action Plan.

[ ]✓ I admit to the allegation(s) as stated. I waive all rights to a Code of Penal Discipline/Parole Revocation Hearing and I accept the Corrective Action Plan.

X WILL NOT ADMIT TO POSITIVE UA (David Hartman)

[ ]__ I do not admit to the allegation(s) as stated. I request a Code of Penal Discipline/Parole Revocation Hearing on the stated allegation(s).

*I understand that acceptance of the Corrective Action Plan constitutes an agreement of a Lawful Order/Parole Modification and enforceable under the Code of Penal Discipline/Parole Conditions.*

David Hartman 5-5-03

Offender Signature Date

[signature]

Witness Date

[signature] 050503

Supervisor/designee Date

Timothy L. Griffin

Manager's Initials

Distribution: Department File, Working File, Division File, Offender

Attachment "B"

The Court of Appeals teaches us, in Brown v. Sternes, 304 F.3d 677, 680 et seq., (7th Cir. 2002):

This case exposes a tragic breakdown in the . . . criminal justice system. A mentally ill criminal defendant of recent vintage was arrested, put on trial, convicted of armed robbery, and sentenced to a term of thirty years without anyone taking proper notice of the fact this same defendant had been diagnosed on more than one occasion, confined and treated (from 1986-88), and medicated intermittently for chronic schizophrenia for an extended period of years. His court-appointed attorneys provided a halfhearted defense, neglecting to thoroughly investigate his medical condition and failing to procure medical records establishing that he suffered from a myriad of psychiatric problems. Thereafter, the attorneys proffered self-serving affidavits once their lackadaisical lawyering was revealed and challenged. . . . Thus, the sentencing judge was less than well-informed of critical information, including the defendant's long and well-documented history of mental illness, as well as his prolonged period of treatment and confinement in a psychiatric unit during his prior imprisonment. . . . Based on the record before us, we are compelled to conclude that counsel's performance was deficient. . . . [C]ounsel . . . failed to articulate any strategic reason for the abandonment of the investigation into [the defendant's] mental history. . . . [T]his failure to investigate adequately and discover [the defendant's] documented history of schizophrenia and treatment fell below an objectively reasonable standard of performance. . . . [Counsel] abandon[ed] . . . her client's interest. . . . [Counsel's] lack of diligence more than demonstrates that [the defendant] was not represented in a professionally competent manner. . . . [T]he failure of [the defendant's] trial counsel to supply the court . . . with available documentation of [the defendant's] psychiatric illness prejudiced [the defendant's] defense by providing the trial judge with less than reliable information, thereby contributing to the trial judge's rendering a finding of law based on inaccurate conclusions regarding his competency and sanity. . . . [B]ecause of the failure of [the defendant's] attorneys . . . to discover and to bring [the defendant's] mental problems and medical history to the court's attention, his trial and sentencing hearing were conducted without the benefit of the knowledge of the severity of his mental condition. . . . The prejudice [the defendant suffered] is clear

and readily apparent. Because of [the defendant's] attorneys' failure to present evidence of [the defendant's] mental condition, the court . . . [found] . . . that [the defendant] was competent to stand trial and sane at the time he committed the crime. It should be pointed out that [the defendant's] trial attorney . . . had ample opportunity to make a record of insisting upon a competency hearing had he presented evidence . . . that [the defendant] had in the past suffered and probably was suffering from chronic schizophrenia, along with symptoms of paranoia and hallucinations, and that he had also evidently failed to take medication to remedy his condition for at least two **months** [Our] law requires that courts conduct competency hearings whenever a bona fide doubt of the defendant's fitness is raised. . . . Certainly the medical records confirm [the defendant's] medical problems, and these records would raise a bona fide doubt regarding his competence. Further, [the defendant's] attorneys might very well have found it probable (and certainly had an ethical and legal obligation to explore this possibility) to prevail on an insanity defense, given Dr. Ferrell's conclusion that "all decisions [the defendant] made while off his medication should indeed be viewed as the decisions of an irresponsible, unreasonable, and illogical man."

We understand that psychiatry is an imperfect science at best. However, *Strickland* does not require absolute certainty—it only requires a probability sufficient to undermine confidence that the result of the proceeding is reliable. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. The failure of the public defenders, the doctors, the probation officer, and the state courts in the handling of this case of an indigent and mentally ill defendant not only "undermine[s] confidence" in the reliability of the result; it might well signal a system that is in need of review and repair. Given Brown's extensive and well-documented battle with chronic schizophrenia, as well as Dr. Ferrell's report characterizing *Brown's crime as demonstrative of a "lack of logical, cohesive thinking" and the product of "the thought-distorting effects of schizophrenia," we refuse to countenance the appellate court's conclusion that the result of Brown's trial "would not have been different"* had trial counsel taken the minimal time to secure his mental health records and properly inform the court of Brown's condition.

We conclude that Brown was prejudiced by his counsel's failure to investigate (*e.g.,* talking to his family, securing his prison medical records), to request a hearing to determine his competency to stand trial, and to consider seriously the question of whether to enter a plea of not guilty by reason of insanity. The Illinois Court of Appeals' decision to the contrary is an unreasonable application of the *Strickland* standard.

## IV. CONCLUSION

This case is a striking example of a legal system that processed this defendant as a number rather than as a human being; it signals a breakdown of a process that might very well be in need of review, adjustment, and repair. Brown's psychiatric illness was not given so much as a sideways glance by the parties involved. Not only did Brown's public defender trial attorneys drop the ball; so did the court-appointed mental health doctors (a psychologist and a psychiatrist) and probation officer, all of whom failed to conduct even a sufficient inquiry into his family background and extensive medical history. As a result, the state trial court proceeded without any awareness of his condition. We have a record before us that mandates—in the interest of justice—the conclusion that Brown was denied his Sixth Amendment right to effective assistance of counsel on the grounds that his counsels' failure to investigate his history of mental illness prejudiced the outcome of his trial. In so doing, we find it unnecessary to address Brown's claim that he was denied his Fourteenth Amendment due process right because he was tried and convicted when he was not competent to stand trial.

We REVERSE the decision of the district court and REMAND with directions to GRANT the writ of habeas corpus unless the State of Illinois elects to re-try Brown within a reasonable time to be fixed by the district court.

Appendix

Brown v. Sternes, 304 F.3d 677, 680 et seq. (7th Cir. 2002), addressing the issue of counsel's failure to investigate the defendant's history of serious mental illness and counsel's failure to move for a competency hearing. The case of Brown v. Sternes, supra, presents a case analagous to the case of the present defendant, in which counsel was ineffective for failure to investigate, before trial, the issues of the defendant's sanity and competency both at the time of the offense and at time of trial.

# CERTIFICATE OF SERVICE

I, DAVID L. HARTMAN, hereby certify that I have served a true and correct copy of the following:

which is deemed filed at the time it was delivered to prison authorities for forwarding,*Houston v. Lack, 487 U.S. 266 (1988), upon the (plaintiff/defendant) (petitioner/respondent) (appellant/appellee) and/or its attorney(s) of record by placing same in a sealed first-class postage prepaid envelope addressed to:

and deposited into this institution internal mail system located at FCI BIG SPRING, 1900 Simler Avenue, Big Spring, Texas 79720, on this 26 th day of NOVEMBER, 2010

David L. Hartman

*Pursuant to Fed.R.App.P25(a)(2)(c), "A paper filed by an inmate confined in an institution is timely filed if deposited in the institution's internal mail system on or before the last day for filing."